UNITED STATES DISTRICT COURT
FOR THE
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| GULF RESTORATION NETWORK, *et al.* ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No. 2:12-cv-00677 |
| v. ) | Section "A," Division 3 |
| ) | Honorable Jay C. Zainey |
| ) | Magistrate Judge Knowles |
| LISA P. JACKSON, ) | |
| Administrator of the United States ) | |
| Environmental Protection Agency, ) | |
| and THE UNITED STATES ) | |
| ENVIRONMENTAL PROTECTION ) | |
| AGENCY, ) | |
| ) | |
| Defendants. ) | |

**STATE INTERVENORS' REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT**

STATE OF LOUISIANA
JAMES D. "BUDDY" CALDWELL
ATTORNEY GENERAL

*La. Department of Environmental Quality*

Megan K. Terrell                              Herman Robinson, Executive Counsel
Deputy Director, Civil Division               Christopher Ratcliff
Assistant Attorney General                    602 North Fifth Street
Louisiana Department of Justice               Baton Rouge, LA 70802
1885 North Third Street                       Tel:    (225) 219-3985
Baton Rouge, LA 70802                         Fax:    (225) 219-4068
Tel.: (225) 326-6085
Fax: (225) 326-6099

*La. Department of Natural Resources*         *La. Department of Agriculture and Forestry*
Isaac Jackson, Jr., General Counsel           Tabitha I. Gray, Executive Counsel
P.O. Box 94396                                P.O. Box 631
Baton Rouge, LA 94396                         Baton Rouge, LA 70821
Tel:  (225) 342-2614                          Tel:  (225) 922-1234

| | |
|---|---|
| STATE OF ALABAMA<br>LUTHER STRANGE<br>ATTORNEY GENERAL<br><br>Robert T. Tambling<br>Chief, Environmental Section<br>501 Washington Avenue<br>P.O. Box 300152<br>Montgomery, Alabama 36130<br>Tel.:   (334) 242-7300<br><br>STATE OF ARKANSAS<br>DUSTIN MCDANIEL<br>ATTORNEY GENERAL<br><br>Charles L. Moulton<br>Senior Assistant Attorney General<br>Office of the Attorney General<br>323 Center Street, Suite 200<br>Little Rock, Arkansas 72201<br>Tel.:   (501) 682-2007<br><br>STATE OF IOWA<br>THOMAS J. MILLER<br>ATTORNEY GENERAL<br><br>David R. Sheridan<br>Assistant Attorney General<br>Environmental Law Division<br>Iowa Department of Justice<br>Lucas State Office Building<br>321 E. 12th Street, Ground Flr.<br>Des Moines, IA 850319<br>Tel:   (515) 281-5351<br><br>STATE OF ILLINOIS<br>LISA MADIGAN<br>ATTORNEY GENERAL<br><br>Gerald T. Karr<br>Senior Assistant Attorney General<br>Environmental Bureau<br>69 West Washington Street, Suite 1800<br>Chicago, Illinois 60602<br>Tel:   (312) 814-3369 | STATE OF KANSAS<br>DEREK SCHMIDT<br>ATTORNEY GENERAL<br><br>Jeffery A. Chanay<br>Deputy Attorney General<br>Civil Litigation Division<br>Office of the Attorney General<br>Memorial Building, 3rd Floor<br>120 SW 10th Avenue<br>Topeka, Kansas 66612-1597<br>Tel:   (785) 296-2215<br><br>STATE OF KENTUCKY<br>JACK CONWAY<br>ATTORNEY GENERAL<br><br>Sean J. Riley<br>Deputy Attorney General<br>Office of the Attorney General<br>700 Capital Avenue, Suite 118<br>Frankfort, KY 40601<br>Tel:   (502) 696-5300<br><br>STATE OF MISSOURI<br>CHRIS KOSTER<br>ATTORNEY GENERAL<br><br>Jack McManus<br>Chief Counsel<br>Missouri Attorney General's Office<br>Agriculture and Environment Division<br>P.O. Box 899<br>Tel:   (573) 751-1622<br><br>STATE OF MONTANA<br>TIMOTHY C. FOX<br>ATTORNEY GENERAL<br><br>Cory J. Swanson<br>Deputy Attorney General<br>215 North Sanders Street<br>P.O. Box 201401<br>Helena, MT 59620-1401<br>Tel:   (406) 444-5774 |

| | |
|---|---|
| STATE OF NEBRASKA<br>JON C. BRUNING<br>ATTORNEY GENERAL | STATE OF OKLAHOMA<br>E. SCOTT PRUITT<br>ATTORNEY GENERAL |
| Katherine J. Spohn<br>Deputy Attorney General<br>Blake E. Johnson<br>Assistant Attorney General<br>2115 State Capitol<br>Lincoln, NE 68509-8920<br>Tel:   (402) 471-2682 | P. Clayton Eubanks<br>Deputy Solicitor General<br>313 N.E. 21st St.<br>Oklahoma City, OK 73015<br>Tel:   (405) 521-3921 |
| STATE OF NORTH DAKOTA<br>WAYNE STENEHJEM<br>ATTORNEY GENERAL | STATE OF SOUTH DAKOTA<br>MARTY J. JACKLEY<br>ATTORNEY GENERAL |
| Margaret I. Olson<br>Assistant Attorney General<br>Office of the Attorney General<br>500 North 9th Street<br>Bismark, ND 58501-4509<br>Tel:   (701) 328-3640 | Roxanne Giedd<br>Deputy Attorney General<br>Chief, Civil Litigation Division<br>Attorney General's Office<br>1302 E. Highway 14, Suite 1<br>Pierre, SD 57501<br>Tel:   (605) 773-3215 |

**STATE INTERVENORS' REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT**

Pursuant to the Court's Order entered September 20, 2012 (Doc. No. 124), State-Intervenors hereby reply to Plaintiffs' Combined Memorandum Of Law In Opposition To EPA's Cross-Motions and Reply Memorandum of Law In Support of Plaintiffs' Motion for Summary Judgment ("Res. Br.") filed with the Court on April 3, 2013 (Doc. No. 165). EPA's denial of Plaintiffs' petition for rulemaking should be upheld because the "necessity determination" which is a condition precedent to EPA's issuance of revised water quality standards under Clean Water Act § 303(c)(4)(B) is discretionary, and it was based on relevant and appropriate factors. Accordingly, the Court should grant EPA's motion for summary judgment.

**ARGUMENT**

**I.   THE "NECESSITY DETERMINATION" REQUIRED PRIOR TO ISSUING WATER QUALITY STANDARDS UNDER § 303(c)(4)(B) IS A DISCRETIONARY ACTION.**

The Court should uphold EPA's denial of Plaintiffs' rulemaking petition because the necessity determination that must precede the requested rulemaking is discretionary with the Agency. Plaintiffs claim EPA unlawfully refused to respond to the rulemaking petition's "straightforward" request for a "necessity determination triggering promulgation of nutrient criteria." Res. Br. at 5; 22. In light of Plaintiffs' criticism of EPA's and Intervenors' "mimimal response to Plaintiffs' two straightforward contentions in this case," it is worth noting the rulemaking petition itself did not actually make a specific request for a necessity determination from EPA. EPA-MARB000078. Based on the petition for rulemaking alone, it is not clear whether Plaintiffs understood the necessity determination to be an independent step in the rulemaking process under § 303(c)(4)(B). Rather, the petition for rulemaking requested only the

3

promulgation of numeric nutrient criteria and TMDLs for various waterbodies. EPA-MARB000076-80. On appeal however, Plaintiffs claim EPA acted arbitrarily and capriciously in refusing to respond to a request that was never specifically made. Res. Br. at 1.

Indicative of this confusion, Plaintiffs continue to conflate the two separate agency actions referred to in § 303(c)(4)(B):  1) the determination that new or revised water quality standards are necessary; and 2) the preparation and publication of proposed new or revised water quality standards. See, 33 U.S.C. § 1313(c)(4)(B). Plaintiffs' conflation of these actions may be partly responsible for Plaintiffs' and Defendants' disagreement regarding the discretionary nature of EPA's § 303(c)(4)(B) authority.

Plaintiffs state they "have never suggested that a necessity determination, a statutory prerequisite to the rulemaking sought in the Petition, is non-discretionary." Res. Br. at 25. This statement by Plaintiffs is a contradiction of the claim that "EPA acted arbitrarily and capriciously because it refused to answer, one way or the other, the relevant statutory question whether numeric nutrient criteria are 'necessary,'" Res. Br. at 1. By virtue of the discretionary nature of the "necessity determination," EPA can lawfully determine to withhold such discretionary action. If EPA were required to provide the "yes or no" answer Plaintiffs suggest, the exercise of the responsibility to make a "necessity determination" would cease to be discretionary – any party could compel the EPA to act by submitting a rulemaking petition pursuant to APA § 553(e).

To be sure, Plaintiffs do not claim a State failed to submit, or EPA failed to conduct an adequate review of, any required new or revised water quality standards pursuant to § 303(c)(1) – (3). See, 33 U.S.C. § 1313(c)(1) – (3) (setting forth the process by water quality standards are subject to triennial review by the States and EPA to determine their consistency with "the

4

requirements of this chapter"). Clearly, the language Congress used in setting forth the triennial review process creates non-discretionary obligations on the part of the States and EPA. See, *Id*. ("shall from time to time…hold public hearings for the purpose of reviewing applicable water quality standards;" "such revised or new standard shall be submitted to the Administrator;" "such standard shall thereafter be the water quality standard for the applicable waters").

However, if making a "necessity determination" under § 303(c)(4)(B) were non-discretionary, the triennial review established by subsections (1) - (3) would be rendered superfluous. "But of course we construe statutes, where possible, so as to avoid rendering superfluous any parts thereof." *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 112 (1991); see also, *United States v. Menasche*, 348 U.S. 528, 538-539 (1955). According to Plaintiffs' proposed interpretation, EPA would be obligated to make the "necessity determination" at any given time, then proceeding with the promulgation of revised water quality standards rather than allowing the State review process to go forward on a triennial basis. The Court should reject Plaintiffs' proposed interpretation.

Furthermore, Plaintiffs mischaracterize the nature of the "necessity determination" contemplated by Congress under § 303(c)(4)(B). See, Res. Br. at 2 ("A lawful response, as explained by Plaintiffs, requires a yes or no answer to the statutory question of necessity"). To meet the standard of Plaintiffs' interpretation of § 303(c)(4)(B) would require EPA to conduct a review of any given number of waterbodies upon the submission of a rulemaking petition under APA § 553(e) to determine, at a minimum, that new or revised water quality standards are *not* necessary in a particular waterbody. In the case of Plaintiffs' rulemaking petition, the review would have to encompass all waterbodies in the 50 States to which water quality standards are applicable. "Where the literal reading of a statutory term would 'compel an odd result,' [the

5

Court] must search for other evidence of congressional intent to lend the term its proper scope." *Public Citizen v. United States Dep't of Justice*, 491 U.S. 440, 454 (1989) (citing *Green v. Bock Laundry Machine Co.*, 490 U.S. 504, 509 (1989); see also, *United States v. Granderson*, 511 U.S. 39, 47 n.5 (1994) (dismissing an interpretation said to lead to an absurd result). Accordingly, the Court should avoid interpreting § 303(c)(4)(B) as compelling such affirmative action by EPA due to its likelihood to produce absurd results.

## II. EPA DID NOT IMPERMISSIBLY RELY UPON EXTRA-STATUTORY CONSIDERATIONS IN DENYING THE PETITION FOR RULEMAKING.

EPA's denial of Plaintiffs' rulemaking petition was not impermissible because it was based on consideration of "relevant factors." *Am. Horse Prot. Ass'n, Inc. v. Lyng*, 812 F.2d 1, 5 (D.C. Cir. 1987). Plaintiffs claim EPA presented "only extra-statutory reasons" in denying their petition for rulemaking. Res. Br. at 1; 5. Plaintiffs go on to explain "[w]hen an agency receives a request for action under a statute – as in this case, a § 303(c)(4)(B) necessity determination – it has discretion to explain, within the parameters of the statute, why a decision one way or the other is consistent with the law." Res. Br. at 5. The "extra-statutory" consideration Plaintiffs refer to in this claim is the availability of, and burden on, administrative resources. Res. Br. at 27.

### A. EPA's reliance on the administrative burden attendant Plaintiffs' rulemaking petition was permissible under the Clean Water Act.

Section 303(c)(4)(B) contains "no language…which identifies the factors to be used by the agency in deciding whether to exercise its discretion." *Missouri Coalition for the Environment Foundation v. Jackson*, 853 F. Supp. 2d 903, 911 (W.D. Mo. 2012). Given the scope of discretion afforded to EPA in making a "necessity determination," the Court should find EPA's denial of the Plaintiffs' petition for rulemaking "meets the minimum standards for rationality."

*Louisiana Envtl. Action Network v. EPA*, 382 F.3d 575, 582 (5th Cir. 2004). The Court's analysis of the factors considered and relied upon by EPA in denying Plaintiffs' rulemaking petition need not go any further than this point.

However, even if it would be inappropriate under certain circumstances for EPA to rely on the availability of administrative resources in determining whether to exercise its discretionary authority under § 303(c)(4)(B), the Court should account for the nature of the rulemaking request underlying the present action. Rather than petition EPA for a "necessity determination" as to a particular body of water, Plaintiffs requested numeric nutrient criteria and TMDLs be promulgated for all waterbodies in all 50 states; or alternatively, all water bodies in the Mississippi River Basin; or alternatively, the waterbodies within the mainstem of the Mississippi River and the Northern Gulf of Mexico. EPA-MARB000076-80. In light of the scope of Plaintiffs' rulemaking petition, EPA reasonably acknowledged the infeasibility of the requested approach given the vast amount of administrative resources such an undertaking would require.

Plaintiffs acknowledge that Congress set forth the appropriate considerations with respect to water quality standards noting such standards are to "protect the public health or welfare, enhance the quality of water and serve the purposes of this Chapter; and shall be established taking into consideration their use and value for public water supplies, propagation of fish and wildlife, recreational purposes, and agricultural, industrial, and other purposes, and also taking into consideration their use and value for navigation." Res. Br. at 15. These factors are enumerated in § 303(c)(2)(A) for use in the non-discretionary process of conducting the triennial review of State water quality standards. Significantly, Congress did not specify or cross-reference such factors in granting the EPA's discretionary authority under § 303(c)(4)(B). "Where Congress includes particular language in one section of a statute but omits it in

7

another…it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23, 104 S. Ct. 296 (1983). Accordingly, it is reasonable to assume that Congress did not intend to preclude EPA from considering the administrative burden attendant Plaintiffs request when determining whether to exercise the discretionary authority granted under § 303(c)(4)(B).

### B. EPA permissibly relied upon the working relationship with the States in addressing nutrient pollution to deny Plaintiffs' rulemaking petition.

Regardless of the appropriateness of EPA's consideration of the administrative burden associated with Plaintiffs' rulemaking request, the Court should uphold EPA's denial because it was permissibly based on the cooperative working relationship with the States to address nutrient pollution. EPA-MARB000006. Plaintiffs' argument that EPA acted arbitrarily and capriciously because it relied on the administrative burden attendant the scope of the rulemaking request disregards the denial's extensive reliance on the CWA's requirement for EPA to work in tandem with the States on nutrient pollution, and the efficacy of such arrangement. EPA-MARB00004. Assuming *arguendo* Plaintiffs are correct in finding the CWA replete with factors intended to be considered by EPA in determining whether to exercise the discretion to make a necessity determination under § 303(c)(4)(B), see Res. Br. at 15, as opposed to factors to be applied in the triennial review of water quality standards, they overlook one of the fundamental requirements of the CWA: the recognition, preservation, and protection of "the primary responsibilities and rights of the States to prevent, reduce, and eliminate pollution." 33 U.S.C. § 1251(b).

The "cooperative federalism" arrangement expressly contemplated by the CWA has been repeatedly confirmed by judicial precedent. See, 33 U.S.C. § 1251(b); *Natural Res. Def. Council v. EPA*, 16 F. 3d 1395 (4th Cir. 1993). The findings set forth in EPA's denial letter are consistent with the required cooperative federalism structure: "The most effective and

8

sustainable way to address nutrient pollution is to build on these efforts and work cooperatively with states; this approach is preferable to undertaking an unprecedented and complex set of rulemakings to promulgate federal NNC for a large region." EPA-MARB00004.  Nevertheless, Plaintiffs largely disregard the significance of States the primary authority to address water quality in intrastate and interstate waters and EPA's explicit deference to the States in denying the petition for rulemaking.  EPA-MARB00005.  Plaintiffs also appear to discount the current efforts being undertaken by the States.  See, Doc. 153 at 7-10.  In light of the actual State efforts underway to reduce nutrient loadings and EPA's express deference to the States' primary authority to develop water quality standards under the CWA, the Court should uphold EPA's denial.

## CONCLUSION

For the reasons set forth above, EPA's denial of Plaintiffs petition for rulemaking was reasonable.  See, *Defenders of Wildlife v. Gutierrez*, 532 F. 3d 913 (D.C. Cir. 2008).  The action Plaintiffs now request, a necessity determination, is committed wholly to the discretion of the agency.  To the extent the Clean Water Act provides guidance as to the factors to be considered in determining whether to make a necessity determination, EPA's reliance on the cooperative federalism structure of the statute and the administrative burdens attendant Plaintiffs' request were relevant and reasonable bases for the denial.  Accordingly, and given the degree of deference accorded to agency decisions not to initiate rulemakings, the Court should grant EPA's motion for summary judgment.

Respectfully submitted this 10th day of May, 2013.

FOR THE STATE OF LOUISIANA

March 4, 2013

| | |
|---|---|
| /s/ Megan K. Terrell | /s/ Christopher A. Ratcliff |
| Megan K. Terrell (La. Bar #29443) | Herman Robinson, Executive Counsel (#2077) |
| Assistant Attorney General | Christopher A. Ratcliff, Attorney (#18675) |
| Deputy Director, Civil Division | chris.ratcliff@la.gov |
| Louisiana Department of Justice | La. Department of Environmental Quality |
| 1885 North Third Street | Legal Division |
| Baton Rouge, LA 70802-0000 | P.O. Box 4302 |
| Tel:   (225) 326-6020 | 602 North Fifth Street (70802) |
| terrellm@ag.state.la.us | Baton Rouge, LA 70821-4302 |
| | Tel:   (225) 219-3985 |
| | |
| Isaac Jackson, Jr. | Tabitha I. Gray |
| General Counsel | Executive Counsel |
| La. Department of Natural Resources | La. Department of Agriculture & Forestry |
| P.O. Box 94396 | P.O. Box 631 |
| Baton Rouge, LA 94396 | Baton Rouge, LA 70821 |
| Tel:  (225) 342-2614 | Tel:  (225) 922-1234 |

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing memorandum was electronically filed this 10th day of March, 2013, using the Court's CM/ECF System, which will send notification of such filing to the attorneys of record for each party, who have registered with the Court's CM/ECF system.

/s/ Megan K. Terrell
Megan K. Terrell