# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **GULF RESTORATION NETWORK, *et al*.,** | ) | **CIVIL ACTION** |
| | ) | |
| **Plaintiffs,** | ) | **NO. 12-677** |
| | ) | |
| **v.** | ) | **SECTION "A" (3)** |
| | ) | |
| **BOB PERCIASEPE, Acting Administrator of the** | ) | **JUDGE JAY C. ZAINEY** |
| **United States Environmental Protection Agency,** | ) | |
| **and THE UNITED STATES** | ) | **MAGISTRATE JUDGE DANIEL E.** |
| **ENVIRONMENTAL PROTECTION AGENCY,** | ) | **KNOWLES, III** |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

# NON-STATE INTERVENOR-DEFENDANTS' JOINT REPLY MEMORANDUM IN SUPPORT OF EPA'S CROSS MOTION FOR SUMMARY JUDGMENT AND IN <u>OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT</u>

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................1

ARGUMENT ....................................................................................................................2

I.     PLAINTIFFS' CONCESSION THAT THEY HAVE NOT
DEMONSTRATED NECESSITY IN ANY STATE DEFEATS THEIR
SECOND CLAIM FOR RELIEF. ...................................................................2

       A.    Plaintiffs Now Fatally Concede That They Lack Evidence To
Support A Finding Of Necessity.............................................................3

       B.    Even Aside From Plaintiffs' Fatal Concession, Their Second Claim
Fails Because They Have Not Shown That EPA's Denial Was
Arbitrary And Capricious. ....................................................................4

II.    PLAINTIFFS' FIRST CLAIM SHOULD BE DISMISSED BECAUSE
EPA DENIED PLAINTIFFS' PETITION BASED ON RELEVANT
STATUTORY FACTORS................................................................................7

       A.    Plaintiffs Concede That Consideration Of State Programs Is
Appropriate Under Section 303(c)(4)(B).............................................8

       B.    Plaintiffs Do Not Dispute That Federal Promulgation Of Numeric
Criteria Is Only "Necessary" If It Is Indispensable. ...........................11

       C.    Plaintiffs Continue to Mistakenly Analogize this Case to
*Massachusetts v. EPA.* .......................................................................13

CONCLUSION..............................................................................................................15

## <u>INTRODUCTION</u>

Plaintiffs cannot obtain the relief requested in their Amended Complaint because their two claims have no support in the law or facts.  Plaintiffs' reply brief acknowledges their "*failure to 'demonstrate' necessity* [for federal promulgation of water quality criteria] *in any or all states*."  Pls' Reply at 38 (emphasis added).  This concession eviscerates the very basis for their substantive claim (claim two):  that Plaintiffs' Petition "provide[d] *undisputed evidence* that numeric nutrient water quality standards . . . are necessary" (Am. Compl. ¶ 48; emphasis added), which rendered EPA's denial of their Petition arbitrary and capricious.  Because Clean Water Act ("CWA") Section 303(c)(4)(B), 33 U.S.C. § 1313(c)(4)(B), *requires* EPA to determine that such criteria are necessary in any state before it issues federal criteria for that state, Plaintiffs' acknowledgement that they have provided no such evidence, requires this Court to dismiss claim two.

Plaintiffs' first claim -- that EPA's petition denial was procedurally deficient because EPA "dodged" the question or relied on impermissible factors -- is also unsupported.  In denying Plaintiffs' Petition, EPA found, in effect, that federal promulgation of numeric nutrient criteria is not necessary at this time in light of ongoing federally supported state efforts.  Ongoing state efforts and the efficacy of state programs are relevant statutory factors under Section 303(c)(4)(B), as Plaintiffs themselves concede.  *See* Pls' Reply at 26 (agreeing that any EPA determination that federal criteria are necessary *must* be preceded by "a conclusion that state efforts are inadequate").  Section 303(c)(4)(B) -- in contrast to the narrowly focused statutory provision at issue in *Massachusetts v. EPA*, 549 U.S. 497 (2007) -- does not confine EPA's analysis to exclusively scientific or technical factors.  Rather, it authorizes EPA to assess whether mechanisms other than federally promulgated criteria are fulfilling or can achieve the requirements of the Act; if not, EPA shall determine that federal criteria are "necessary."

Because EPA denied Plaintiffs' Petition based on relevant statutory factors, Plaintiffs are not entitled to relief on their procedural claim.

## ARGUMENT

### I.  Plaintiffs' Concession That They Have Not Demonstrated Necessity In Any State Defeats Their Second Claim for Relief.

Plaintiffs' second claim for relief asserts that EPA acted arbitrarily and capriciously because the "undisputed" facts compelled EPA to grant the Petition, not to deny it.  That Plaintiffs' second claim for relief is a substantive challenge to EPA's action that attacks the *merits* of the denial, rather than some purported procedural infirmity, is abundantly clear from the Amended Complaint and from Plaintiffs' subsequent briefs.  Plaintiffs title their second claim for relief:  "Denial Contrary to Undisputed Evidence."  Am. Compl. at 16.  The Amended Complaint explicitly contends (i) that "Plaintiffs' Petition provides *undisputed evidence* that numeric nutrient water quality standards for the waters of the Mississippi River basin and northern Gulf of Mexico are 'necessary to meet the requirements of [CWA]," Am. Compl. ¶ 48 (emphasis added); *and* (ii) that "EPA's failure in its response to the petition to determine  . . . that numeric nutrient water quality standards for the ten Mississippi River mainstem states are necessary . . . is arbitrary and capricious[.]"  *Id.* ¶ 49.[1]

In a stunning reversal of position, Plaintiffs now admit that they have failed to put forward evidence sufficient to demonstrate the necessity of numeric nutrient criteria in *any* state in the Mississippi River basin.  Pls' Reply at 38.  This admission removes the foundation for

---

[1] This posture is ratified in Plaintiffs' briefs.  *See, e.g.,* Pls' Mem. in Supp. of MSJ at 28 (based on denial letter and on "the overwhelming evidence EPA has amassed since 1998, the Agency's failure to render a necessity determination cannot be defended on rational grounds."); and Pls' Reply at 22-23 ("Plaintiffs' Second Claim for Relief . . . [contends] that EPA's non-response was arbitrary and capricious in substance as well . . .").

their second claim -- that their Petition "provides undisputed evidence" of necessity such that it

was arbitrary and capricious for EPA not to find necessity.  *See* Am. Compl. ¶ 48.  As explained

below, this Court cannot find that EPA's petition denial was arbitrary and capricious given

Plaintiffs' acknowledged failure to demonstrate necessity in any state.

**A.      Plaintiffs Now Fatally Concede That They Lack Evidence To Support A Finding Of Necessity.**

In our initial brief in this case, the Non-State Intervenors demonstrated that under Section

303(c)(4)(B), determinations of necessity can be made only on a state-by-state basis.  *See* Non-

State Intervenors' Mem. in Supp. of EPA Cross-MSJ at 15-16.  This principle is neither rebutted

nor even contested by Plaintiffs in their Reply Brief.  Indeed, Plaintiffs themselves acknowledge

that a finding of necessity requires not only identifying a particular water quality problem, but

also concluding "that state efforts are inadequate to resolve it such that new or revised criteria are

necessary." Pls' Reply at 26.  This point is affirmed by the Intervening States and by EPA.  *See*

Intervening States Mem. in Supp. of EPA Cross-MSJ at 7; *see also* Combined Mem. in Supp. of

EPA's MTD or in the Alt. for SJ and in Opp. to Pls' MSJ at 19.  It is thus undisputed that a

determination of necessity by EPA requires the Agency to examine in each particular state both

the extent of a water quality problem and the effectiveness of state actions or measures in

addressing that problem.

Yet Plaintiffs now concede that no such evidence exists in the record before this Court:

> Plaintiffs' acknowledged failure to "demonstrate" necessity in any
> or all states would, indeed be "fatal" *if* Plaintiffs were asking this
> Court to order directly that EPA make a necessity determination.

Pls' Reply at 38.

Plaintiffs' "acknowledged  failure" to demonstrate necessity is indeed "fatal" to their

second claim for relief for the simple reason that the claim is premised on the allegation that the

"undisputed evidence" demonstrates the necessity of federal numeric nutrient criteria for the states at issue and that EPA's denial was, therefore, arbitrary and capricious. Am. Compl. ¶ 48. Plaintiffs' candid admission that they have failed to provide the requisite evidence to demonstrate that federal criteria are necessary defeats their second claim for relief. If the record does not and cannot support a finding of necessity, then Plaintiffs cannot prevail on their claim that EPA's failure to find necessity was arbitrary and capricious.

In one of several misdirected arguments, Plaintiffs try in vain to salvage their case by contending that their failure to demonstrate necessity would be fatal *only* if they were asking this Court to order EPA to issue criteria, which would require the Court to find the "necessity" of such action even though Plaintiffs confess they have not demonstrated it. Plaintiffs then unconvincingly assert that they are not seeking such relief. Pls' Reply at 38. Plaintiffs' diversion is unavailing. As a substantive matter, Plaintiffs' admitted failure is equally fatal to both a prayer for an order to EPA to find necessity *and* to their plea that this Court declare EPA's denial of the Petition to be arbitrary and capricious. Both forms of relief are defeated by the absence of the very evidence Plaintiffs acknowledge is missing.

**B.    Even Aside From Plaintiffs' Fatal Concession, Their Second Claim Fails Because They Have Not Shown That EPA's Denial Was Arbitrary And Capricious.**

Plaintiffs seek to downplay their "acknowledged failure to 'demonstrate' necessity in any or all states" by maintaining that the Court should find that EPA's denial was arbitrary and capricious because of EPA's "multiple sweeping pronouncements" on the importance of numeric nutrient criteria (as if these pronouncements could substitute for actual evidence of necessity). *See* Pls' Reply at 35-36, 38-39. This attempt to resuscitate claim two fails for multiple reasons.

First, as explained above, Plaintiffs' "acknowledged failure" directly undercuts the explicit, substantive basis of their second claim, *i.e.*, that "Plaintiffs' Petition provides

4

undisputed evidence that numeric nutrient water quality standards . . . are necessary." Am. Compl. ¶ 48.

Second, Plaintiffs elsewhere concede repeatedly that the very same EPA statements that they now contend the Agency is legally obligated to rebut were *not* necessity determinations. *See, e.g.*, Pls' Reply at 36 ("Plaintiffs never claimed that EPA has already made a determination."). As a consequence, Plaintiffs' position devolves into the following improbable proposition: Section 303(c)(4)(B) -- which requires establishing federal water quality criteria *only* after a finding of necessity on a state-by-state basis -- somehow imposes an obligation on EPA, even in the *absence* of a finding of necessity. This position is unsupported by the text of 303(c)(4)(B), or any other authority. Generic pronouncements of a preference for numeric criteria do not compel federal promulgation of such criteria where there is no demonstration of necessity in any given state.

Third, EPA's denial is consistent with EPA's most-recent policy pronouncement on the need for numeric nutrient criteria. EPA's current policy is reflected in the March 16, 2011 Memoranda from EPA Acting Assistant Administrator Nancy K. Stoner to Regional Administrators (the "Stoner Memo"), transmitting a document titled "Recommended Elements of a State Framework for Managing Nitrogen and Phosphorus Pollution." EPA-MARB000680-85 (Ex. H to Non-State Intervenors' Mem. in Supp. of EPA Cross-MSJ). The Stoner Memo emphasizes the importance of "collaboration with states" and directs the EPA regional offices "to place new emphasis on working with states to achieve near-term reductions in nutrient loadings." Stoner Memo at EPA-MARB000680. It further asserts that "our resources can best be employed by catalyzing and supporting action by states that want to protect their waters from nitrogen and phosphorus pollution." Stoner Memo at EPA-MARB000681. Thus, the denial,

which cited the Stoner Memo, is consistent with current EPA policy and does not represent a policy change that needs to be reconciled with prior EPA statements.  Plaintiffs' position -- that they are entitled to an order requiring EPA to address prior policy statements even when the denial accurately reflects current EPA policy -- is untenable.

Even if the denial reflected some sort of change in policy (which it does not), EPA's action would be evaluated under the arbitrary and capricious standard that is applicable to all agency action under the Administrative Procedure Act.  EPA "need not demonstrate to a court's satisfaction that the reasons for [any] new policy are *better* than the reasons for the old one; it suffices that the new policy is permissible under the statute."  *FCC v. Fox Television*, 556 U.S. 502, 515 (2009).  Courts understand that agencies' policies and priorities appropriately evolve over time and, therefore, a court should find a change of agency position to be arbitrary and capricious only if it "depart[s] from a prior policy *sub silentio* or simply disregard[s] rules that are still on the books."  *Id.*  Here, the denial specifically addresses EPA's most-recent policy pronouncement, the Stoner Memo, as well as the scientific and administrative factors that weigh in favor of continuing its policy of state-led action.  There is no departure from past policy, and the denial certainly did not disregard existing agency policies.

Plaintiffs ask this Court to ignore the controlling test -- whether the current policy is permissible under the statute, which must be evaluated without a "distinction . . . between initial agency action and subsequent agency action undoing or revising that action," *id.*, -- and instead require EPA to rebut Plaintiffs' highly selective list of past EPA statements regarding a public policy preference for numeric nutrient criteria.  *See* Pls' Reply at 38-39 (asserting that on remand EPA should be required to either find necessity or "explain why its past pronouncements of necessity were no longer operative" and also rebut prior statements by the National Research

6

Council and the EPA Inspector General).  Because Plaintiffs do not contend that these past statements are actually necessity determinations, a ruling in their favor on claim two would, in effect, impermissibly heighten the standard of review of agency action and distract from the only relevant inquiry here: whether its decision is in conformity with the statute.

## II.   Plaintiffs' First Claim Should be Dismissed Because EPA Denied Plaintiffs' Petition Based On Relevant Statutory Factors.

Plaintiffs' first claim for relief should also be dismissed.[2]  In denying Plaintiffs' Petition, EPA responded to the Petition's central question.  The action by the Agency reflects EPA's belief that *federal* promulgation of numeric nutrient criteria is not necessary at this time.  EPA's denial was based on relevant statutory factors which -- Petitioners concede -- include EPA's assessment of the effectiveness and prospect for meeting the requirements of the Act through any number of other state measures and programs.  *See* Pls' Reply at 26.

In addition, Plaintiffs fail to rebut our observation that federal water quality criteria must, at the very least, be deemed by EPA to be more effective than a particular state's nutrient programs before federal criteria can be "necessary to meet the requirements" of the Act.  EPA has determined, as a matter of national nutrient policy, that "catalyzing and supporting action by states" is the most effective way to enhance nutrient programs.  Stoner Memo at EPA-MARB000681.

Finally, Plaintiffs' continued reliance on *Massachusetts v. EPA* is misplaced.  Given the stark contrast between CWA Section 303(c)(4)(B) and the statutory provision at issue in *Massachusetts*, the holding in that case is not relevant precedent for deciding this action.

---

[2] Pages 18-22 of our opening brief provide our initial analysis of the flaws in Plaintiffs' first claim.

**A.      Plaintiffs Concede That Consideration Of State Programs Is Appropriate Under Section 303(c)(4)(B).**

In response to EPA's motion, Plaintiffs set out in detail many of the "requirements of the CWA" that they believe EPA may consider when making an affirmative necessity determination (a determination that federal promulgation of criteria is necessary to meet the requirements of the statute). Pls' Reply at 15-16, 26-27. Tellingly, Plaintiffs agree that an affirmative necessity determination would require EPA to first determine that "state efforts are inadequate to resolve [the nutrient problem] such that new or revised criteria are necessary." *Id.* at 26. Thus, Plaintiffs concede, as they must, that EPA's reliance on the status of state nutrient control programs in denying their Petition was a relevant factor. *See Mo. Coal. for the Env't Fed'n v. Jackson*, 853 F. Supp. 2d 903, 912 (W.D. Mo. 2012) ("There are a variety of factors which potentially could be important for the EPA when deciding whether to promulgate regulations for a specific state at any given time. A state's progress in improving its water quality standards, its available resources, the severity of the state's violations when compared to other states -- each of these factors, among others, could affect EPA's decision of whether or not to promulgate regulations at any given time.").

Moreover, contrary to their earlier insistence that only "technical and scientific" factors may influence EPA's action under Section 303(c)(4)(B), Plaintiffs now concede that the evaluation of state-program effectiveness is, in part, a "policy" consideration. Pls' Reply at 27 ("[T]his evaluation of existing state programs' sufficiency is . . . not *just* a policy determination.") (emphasis added). Plaintiffs' characterization of that appropriate evaluation as *both* a "technical and scientific determination" and "a policy determination" reveals the error in

their initial assertion that EPA may consider only "scientific and technical criteria" under Section 303(c)(4)(B).[3]  *See* Pls' Mem. in Supp. of MSJ at 22.

Plaintiffs' concessions confirm that EPA's Section 303(c)(4)(B) inquiry involves policy considerations.  Moreover, Plaintiffs' attempt to create a distinction between *permissible* policy determinations and *impermissible* policy determinations (Pls' Reply at 27) has no statutory basis. EPA's conclusion in its denial that federal promulgation of water quality criteria will not be as effective as ongoing efforts involving state and federal cooperation is not merely a permissible analysis under Section 303(c)(4)(B), it is the *required* analysis under that section.  *See infra* at pages 11-12 ("necessary" means that no mechanism other than federal criteria can meet the requirements of the Act).  Nor can Plaintiffs credibly argue that earlier, *general* EPA expressions of policy preference (such as the 1998 Clean Water Action Plan) must be given controlling weight, while subsequent evaluations of policy and other considerations that are more targeted (such as those set forth in the denial) must be ignored.

In any case, whether the evaluation of state program sufficiency is labeled a "technical" or "policy" consideration under Section 303(c)(4)(B) is unimportant in determining the legitimacy of EPA's denial in this case.  An assessment of a particular state's nutrient programs might include, a variety of factors, such as assessment of the nutrient loads in the state's waters, the effects of particular loads on state water quality goals, the state's current nutrient programs, the state's plans, in collaboration with EPA, to secure water quality improvements from different sectors, and other considerations that may be relevant with respect to a particular state or water body within a state.  *See, e.g.*, *Mo. Coal.*, 853 F. Supp. 2d at 912.  EPA would also need to

---

[3] As explained in more detail below, this broader analysis called for by Section 303(c)(4)(B) distinguishes it from provisions in other statutes that plainly confine an agency's inquiry to a singular scientific or technical determination.  *See infra* at pages 11-12, 13-15.

evaluate the projected effectiveness of a potential federal rulemaking effort.  Under the CWA, EPA can determine that federal nutrient criteria are "necessary" only if it concludes, upon consideration of relevant factors, (a) that a state's nutrient programs are not capable of meeting the requirements of the Act *and* (b) that federal criteria will be more effective.  In denying Plaintiffs' Petition, EPA determined that it did not have sufficient information to reach that conclusion for any particular state.[4]  Neither Plaintiffs' motion nor the record in this case affords any legitimate basis for this Court to override EPA's conclusion that state-led efforts are the most effective and efficient means to advance the requirements of the CWA.

With the concession that EPA must consider the sufficiency of a particular state's nutrient program (Pls' Reply at 26-27), Plaintiffs' first claim for relief collapses to nothing more than an argument that EPA may not consider the most effective way to employ program resources of the states and EPA.  *See* Pls' Reply at 28.  Plaintiffs offer no statutory authority (nor authority of any other kind) for excluding this critical information from EPA's consideration. Nevertheless, their plea, in effect, would require the Court to issue an order premised on the notion that EPA may consider the sufficiency of a state program but may not consider the practicalities and consequences of choosing to impose federal criteria instead of relying on current and prospective state programs.  Such exclusion is directly contrary to the federalism structure engrained in the CWA, whereby Congress expressed its "policy . . . to recognize, preserve, and protect the primary responsibilities and rights of States . . . ."  33 U.S.C. § 1251(b);

---

[4] Rather than concluding that federal promulgation of numeric criteria are necessary, EPA reviewed the relevant elements of state nutrient programs and the supporting role of the federal government and concluded that state programs are the *most effective* way to address nutrient issues in the vast Mississippi River basin.  Denial at EPA-MARB000004 ("EPA believes that the *most effective* and sustainable way to address widespread and pervasive nutrient pollution in the MARB and elsewhere is to build on these [federalism] efforts and work cooperatively with states and tribes to strengthen nutrient management programs.") (emphasis added).

10

*see, e.g., District of Columbia v. Schramm*, 631 F.2d 854, 863 (D.C. Cir. 1980) (noting "strong current of federalism in the Clean Water Act[.]").

### B.    Plaintiffs Do Not Dispute That Federal Promulgation Of Numeric Criteria Is Only "Necessary" If It Is Indispensable.

As explained in our brief in support of EPA's cross motion for summary judgment, an action is "necessary" when it is "indispensable" or "cannot be done without."  *See* Non-State Intervenors' Mem. in Supp. of EPA Cross-MSJ at 11.  Accordingly, federal promulgation of water quality criteria is only "necessary to meet the requirements" of the CWA when nothing else will fulfill those requirements.  This is the plain and ordinary meaning of "necessary" that this Court must consider.  *See SD Warren Co. v. Maine Bd. of Envtl. Protection*, 547 U.S. 370, 376 (2006) (explaining that when a term "is neither defined in the statute nor a term of art, [this Court is] left to construe it in accordance with its ordinary or natural meaning").  Plaintiffs offer no contrary interpretation of "necessary," and their feeble attempt (*e.g.*, Pls' Reply at 26) to dismiss our prior analysis of the plain meaning of that term -- by denigrating the use of dictionary definitions -- falls short.

When evaluating whether federal promulgation of nutrient criteria is indispensable in a particular state, EPA must examine other mechanisms under the CWA -- an examination that is not exclusively a scientific or technical inquiry, as Plaintiffs concede.  *See* Pls' Reply at 27.  For federal promulgation of water quality criteria to be necessary, EPA must first conclude that nothing else will meet the requirements of the Act.  To reach that conclusion, EPA *must* determine that neither existing state efforts (*e.g.*, state water quality standards, state nonpoint source control regulations, etc.) nor any other permissible mechanisms under the statute suffice.  Here, nothing in Plaintiffs' Petition, its supporting materials, or any of the "multiple sweeping pronouncements" by previous EPA administrations cited by Plaintiffs -- *i.e.*, nothing in the

record -- establishes or even supports that requisite conclusion.  On the contrary, as explained in EPA's denial, alternatives to federal promulgation of water quality criteria are best suited to address excess nutrient pollution at this time.  Denial at EPA-MARB000002-05 (Ex. G to Non-State Intervenors' Mem. in Supp. of EPA Cross-MSJ).

Under Section 303(c)(4)(B), for federal criteria to be "necessary," EPA must conclude that they will be more effective than state programs, but in its denial, EPA reached the opposite conclusion.  Specifically, EPA's denial, which relies in part on the Stoner Memo, described EPA's national efforts and plans to work collaboratively with states to confront the nation's nutrient problem.  Denial at EPA-MARB000002-05; Stoner Memo at EPA-MARB000684-685 (listing eight recommended elements of state nutrient programs).  EPA explained why these state-driven efforts are the most effective means for addressing nutrient issues.  Denial at EPA-MARB000002-05; Stoner Memo at EPA-MARB000680-685.  In EPA's judgment, federal nutrient criteria are not  "necessary" at this time to achieve the goals of the CWA, in light of the alternatives.  *E.g.*, Stoner Memo at EPA-MARB000681 ("While EPA has a number of regulatory tools at its disposal, our resources can best be employed by catalyzing and supporting action by states that want to protect their waters from nitrogen and phosphorus pollution."); *id*. ("States need room to innovate and respond to local water quality needs, so a one-size-fits-all solution to nitrogen and phosphorus pollution is neither desirable nor necessary."); Denial at EPA-MARB000004.  This Court should defer to EPA's judgment:  its decision to keep states in the primary role with respect to nutrient pollution is consistent with "long-standing policy" and Congress's stated preference in the CWA.  *See* Denial at EPA-MARB000005.

C.    **Plaintiffs Continue to Mistakenly Analogize this Case to** *Massachusetts v. EPA*.

In their attempt to jam CWA Section 303(c)(4)(B) into the exception that *Massachusetts* applied to Section 202(a)(1) of the Clean Air Act, 42 U.S.C. § 7521(a)(1) ("CAA Section 202"), Plaintiffs describe their position as founded *not* on "differences between the language" of the two statutes (Pls' Reply at 23), but instead based on the purportedly "*parallel structure* of the two provisions." *Id.* at 24. In fact, the "differences between the language" of the two statutes -- that Plaintiffs would have this Court disregard -- compel a different result here than that reached in *Massachusetts*.

An examination of the actual text of Section 303(c)(4)(B) reveals that the range of factors EPA may permissibly weigh in considering "necessity" is far broader than the specific, scientific determination articulated in CAA Section 202. The question Congress directed EPA to answer in CAA Section 202 is:

- whether an "air pollutant . . . cause[s], or contribute[s] to, air pollution which may reasonably be anticipated to endanger public health or welfare."

In contrast, the broad question posed to EPA in CWA Section 303(c)(4)(B) is:

- whether federal promulgation of "a revised or new [water quality] standard is necessary to meet the requirements of this chapter."

In CAA Section 202, Congress specifically directed a strictly scientific analysis of an air pollutant by instructing EPA to consider issues of causation and health and environmental effects. CWA Section 303(c)(4)(B), on the other hand, contains no such reference to scientific or any other factors to guide EPA's necessity determination, nor does it contain any words similar to those employed in CAA Section 202 -- *e.g.*, "public health," "welfare," "cause, or contribute to," "reasonably anticipated," or "pollution" -- to indicate a limitation on the range of permissible considerations. Rather, Section 303(c)(4)(B) provides only that EPA must regulate whenever it

13

deems promulgation of federal water quality standards to be "necessary to meet the requirements" of the CWA.  This broad standard appropriately allocates to EPA the responsibility to make a holistic inquiry about how best to implement the CWA's multifaceted cooperative federalism.

The central question on the face of Section 303(c)(4)(B) is not confined to an assessment of the causal, health and environmental threats of a particular pollutant, as is the case in CAA Section 202.[5]  Rather, as discussed above (at pages 8-13), Section 303(c)(4)(B) allows EPA broadly to weigh how other programs authorized by the CWA are working and whether federal action under this particular subsection is required.  Indeed, this broad inquiry is precisely how Plaintiffs framed their Petition, arguing that EPA must act under Section 303(c)(4)(B) because "[federal] *numeric water quality standards* for nitrogen and phosphorus *are necessary* to meet the requirements of the Clean Water Act."  Petition at EPA-MARB000077 (Ex. 1 to Pls' Mem. in Supp. of MSJ) (emphasis added).  The broad inquiry in Section 303(c)(4)(B), which contrasts sharply with the tunnel vision of the statutory inquiry under CAA Section 202, renders the *Massachusetts* decision inapposite here.

Finally, Plaintiffs' attempt (Pls' Reply at 29-33) to downplay the significance of Section 303(c)(4)(B)'s emphasis on states as the primary water quality regulators misses the mark.  As discussed at length in the denial and the briefing in this litigation, EPA denied the Petition based on its determination that continuing to support state efforts was superior, as a matter of federal policy under the CWA, to the alternative of promulgating federal numeric nutrient criteria.  This

---

[5] Likewise, the statutory provision at issue in *NRDC v. FDA*, 872 F. Supp. 2d 318, 333 (S.D.N.Y. 2012) is similar to CAA Section 202 -- and readily distinguishable from Section 303(c)(4)(B) -- because the central question there is confined to whether "new evidence . . . shows that [a] drug is not shown to be safe."  *Id.* at 335 (quoting 21 U.S.C. § 360(e)(1)(B)).

rationale is squarely within the ambit of Section 303(c)(4)(B), as the primacy of state regulation is one of the central features and requirements of the CWA.  *See, e.g.*, 33 U.S.C. §§ 1251(b), 1370.  Because the CWA places primary responsibility for water quality standards on states, it was entirely appropriate for EPA to base its refusal to promulgate federal numeric nutrient criteria on the statute's emphasis on the lead role of states as well as the Agency's preference for ongoing state-by-state action.  *See Fl. Wildlife Fed. v. EPA*, 853 F. Supp. 2d 1083, 1158 (N.D. Fla. 2012) ("I assume that in deciding whether to make a 'determination' at all, the Administrator may properly take into account the likelihood that a state will correct the problem itself.").  The fundamental inapplicability of *Massachusetts* is evident when Section 303(c)(4) is contrasted with the complete absence of federalism considerations in CAA Section 202.

## <u>CONCLUSION</u>

For these reasons, this Court should deny Plaintiffs' motion for summary judgment and grant EPA's cross motion for summary judgment.

Dated:  May 10, 2013         Respectfully submitted,

               /s/ S. Ault Hootsell III
         S. Ault Hootsell III (#17630)
         Sarah Perkins Reid (#33311)
         PHELPS DUNBAR LLP
         365 Canal Street, Suite 2000
         New Orleans, LA  70130-6534
         Telephone: (504) 566-1311
         Telecopier: (504) 568-9130
         hootsela@phelps.com
         reids@phelps.com

               /s/ David Y. Chung
         Richard E. Schwartz (admitted *pro hac vice*)
         rschwartz@crowell.com
         David P. Ross (admitted *pro hac vice*)
         dross@crowell.com
         David Y. Chung (admitted *pro hac vice*)
         dchung@crowell.com

Tony G. Mendoza (admitted *pro hac vice*)
tmendoza@crowell.com
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC  20004
(202) 624-2500

*Counsel for Agricultural Retailers Association, American Farm Bureau Federation, National Corn Growers Association, National Pork Producers Council, The Fertilizer Institute, U.S. POULTRY & Egg Association, Alabama Soybean and Corn Association, Arkansas Farm Bureau Federation, Colorado Corn Growers Association, Corn Producers Association of Texas, Illinois Corn Growers Association, Illinois Farm Bureau, Illinois Fertilizer & Chemical Association, Illinois Pork Producers Association, Indiana Corn Growers Association, Indiana Farm Bureau, Indiana Pork Producers Association, Iowa Corn Growers Association, Iowa Farm Bureau Federation, Iowa Pork Producers Association, Kansas Corn Growers Association, Kansas Farm Bureau, Kentucky Corn Growers Association, Kentucky Farm Bureau, Louisiana Chemical Association, Louisiana Farm Bureau Federation, Minnesota Corn Growers Association, Minnesota Farm Bureau Federation, Minnesota Pork Producers Association, Mississippi Farm Bureau Federation, Missouri Agribusiness Association, Missouri Corn Growers Association, Missouri Farm Bureau, Missouri Pork Association, Nebraska Farm Bureau Federation, Oklahoma Farm Bureau, Ohio Corn and Wheat Growers Association, South Dakota Corn Growers Association, South Dakota Farm Bureau Federation, Tennessee Farm Bureau Federation, Tennessee Pork Producers Association, Wisconsin Corn Growers Association, Wisconsin Pork Producers Association, and Wyoming Farm Bureau*

            /s/ Bradley C. Myers
Bradley C. Myers (#1499)
Brad.Myers@keanmiller.com
M. Dwayne Johnson (#1999)
Dwayne.Johnson@keanmiller.com
Katie D. Bell (#29831)

16

Katie.Bell@keanmiller.com
KEAN MILLER LLP
II City Plaza, 400 Convention Street, Suite 700
Post Office Box 3513 (70821)
Baton Rouge, Louisiana 70802
Telephone: (225) 387-0999
Fax: (225) 388-9133

_____ /s/ Lester Sotsky _____
Lester Sotsky, (T.A.) (admitted *pro hac vice*)
Lester.Sotsky@aporter.com
Jeremy Karpatkin (admitted *pro hac vice*)
Jeremy.Karpatkin@aporter.com
ARNOLD and PORTER, LLP
555 12th Street, NW
Washington, D.C. 20004-1206
Telephone: (202) 942-5000
Facsimile: (202) 942-5999

*Counsel for Mosaic Fertilizer, LLC*

_____ /s/ Gregory C. Weiss _____
Gregory C. Weiss, Esq. (LA #14488)
gcweiss@weiss-eason.com
Weiss & Eason LLP
128 Century Oak Lane
Mandeville, LA 70471
Telephone: (985) 626-4326
Facsimile: (985) 626-4200

_____ /s/ Karen M. Hansen _____
Karen M. Hansen (*Admitted pro hac vice*)
khansen@bdlaw.com
Beveridge & Diamond, P.C.
98 San Jacinto Blvd, Suite 1420
Austin, TX 78701
Telephone: (512) 391-8005
Facsimile: (512) 391-8099

Of Counsel:
Nathan Gardner-Andrews
NATIONAL ASSOCIATION OF CLEAN
WATER AGENCIES
1816 Jefferson Place, NW
Washington, D.C. 20036-2505
(202) 833-2672

17

*Counsel for National Association of Clean Water Agencies*

_____/s/ Donald L. Hyatt, II_____
DONALD L. HYATT, II (LSBA24808)
DONALD L. HYATT, II APLC
Energy Center, Suite 2960
1100 Poydras St.
New Orleans, LA 70163
Tel: (504) 582-2466
Fax: (504) 582-2422
hyattlaw@aol.com

_____/s/ Fredric P. Andes_____
Fredric P. Andes (admitted pro hac vice)
BARNES & THORNBURG LLP
One N. Wacker Drive
Suite 4400
Chicago, IL 60606-2809
Tel: (312) 214-8310
Fax: (312) 759-5646
Fredric.Andes@btlaw.com

*Counsel for Federal Water Quality Coalition*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Non-State Intervenor-Defendants' Joint Reply Memorandum in Support of EPA's Cross Motion for Summary Judgment and In Opposition to Plaintiffs' Motion for Summary Judgment was filed electronically using the Court's CM/ECF System this 10th day of May, 2013, which sent notification of such filing to the attorneys of record for each party, who have registered with the Court's CM/ECF system.

                                          /s/ David Y. Chung
                                          David Y. Chung