UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

|  |  |
|---|---|
| GULF RESTORATION NETWORK, et al.<br><br>    Plaintiffs,<br><br>        v.<br><br>BOB PERCIASEPE, Acting Administrator, United States Environmental Protection Agency, and UNITED STATES ENVIRONMENTAL PROTECTION AGENCY<br><br>    Defendants. | 12-cv-00677-JCZ-DEK |

**REPLY IN SUPPORT OF EPA'S MOTION TO DISMISS
OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**

 

IGNACIA S. MORENO
Assistant Attorney General
United States Department of Justice
Environment and Natural Resources
    Division
ANGELINE PURDY
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044

OF COUNSEL:

Peter Z. Ford
Office of General Counsel
United States Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

**TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................1

II.    ARGUMENT ..........................................................................................................3

    A.    EPA's Decision Not To Exercise Its Rulemaking
          Authority Under Section 303(c)(4)(B) Is Not Reviewable ...................................4

    B.    EPA's Denial of Plaintiffs' Rulemaking Petition Was
          Reasonable And Supported By The Administrative Record.................................8

        1.  EPA properly responded to plaintiffs' petition by
            declining to proceed under Section 303(c)(4)(B)
            at this time .................................................................................................9

        2.  EPA reasonably declined to proceed under
            Section 303(c)(4)(B) at this time..............................................................10

III.    CONCLUSION.....................................................................................................13

## TABLE OF AUTHORITIES

**CASES**

*Brazos Elec. Power Coop. v. Sw. Power Admin.*,
   819 F.2d 537 (5th Cir. 1987) ..................................................................................................7

*Christopher Vill. Ltd. P'ship v. Retsinas*,
   190 F.3d 310 (5th Cir. 1999) ..................................................................................................4

*Conservancy of Sw. Fla. v. U.S. Fish & Wildlife Serv.*,
   677 F.3d 1073 (11th Cir. 2012) ......................................................................................5, 6, 8

*Defenders of Wildlife v. Gutierrez*,
   532 F.3d 913 (D.C. Cir. 2008) ................................................................................................9

*FCC v. Fox Television Stations, Inc.*,
   556 U.S. 502 (2009) ..............................................................................................................10

*FDIC v. Bank of Coushatta*,
   930 F.2d 1122 (5th Cir. 1991) ................................................................................................7

*Franklin v. Massachusetts*,
   505 U.S. 788 (1992) ................................................................................................................7

*Hadley v. Chapman*,
   587 F.3d 273 (2009) ..............................................................................................................10

*Lincoln v. Vigil*,
   508 U.S. 182 (1993) ................................................................................................................7

*Massachusetts v. EPA*,
   549 U.S. 497 (2007) ...........................................................................................................5, 9

*Missouri Coal. for the Env't Found. v. Jackson*,
   853 F. Supp. 2d 903 (W.D. Mo. 2012) ...................................................................................6

*National Parks Conservation Ass'n v. U.S. Dep't of Interior*,
   794 F. Supp. 2d 39 (D.D.C. 2011) ........................................................................................10

*Northwest Envtl. Advocates v. EPA*,
   268 F. Supp. 2d 1255 (D. Or. 2003) .......................................................................................7

*WWHT, Inc. v. Fed. Commc'ns Comm'n*,
   656 F.2d 807 (D.C. Cir. 1981) ................................................................................................8

*National Wildlife Fed'n v. Browner*,
  No. 95-1811, 1996 WL 601451 (D.D.C. Oct. 11, 1996) ................................................................6

*Reliable Home Health Care v. Thompson*,
  No. Civ.A. 01-2343, 2002 WL 222025 (E.D. La. Jan. 4, 2002) ....................................................4

*Sierra Club v. U. S. Fish & Wildlife Serv.*,
  No. 11-993, 2013 WL 1111285 (D.D.C. Mar. 19, 2013) .........................................................6, 8

**STATUTES**
Administrative Procedure Act:
5 U.S.C. § 701(a)(1) ...........................................................................................................................5

5 U.S.C. § 701(a)(2) ...................................................................................................................2, 5, 7

Clean Water Act:
33 U.S.C. § 1313(c)(4)(B) ............................................................................................................2, 12

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

|  |  |
|---|---|
| GULF RESTORATION NETWORK, et al. ) <br> ) <br>     Plaintiffs, ) <br> ) <br>     v. ) <br> ) <br> BOB PERCIASEPE, Acting Administrator, ) <br> United States Environmental Protection ) <br> Agency, and UNITED STATES ) <br> ENVIRONMENTAL PROTECTION ) <br> AGENCY ) <br> ) <br>     Defendants. ) | 12-cv-00677-JCZ-DEK |

**REPLY IN SUPPORT OF**
**<u>MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT</u>**

**I. <u>INTRODUCTION</u>**

Defendants Bob Perciasepe, acting Administrator, and the United States Environmental Protection Agency (collectively "EPA" or "Agency") hereby reply in support of their motion to dismiss or, in the alternative, for summary judgment (Docket No. 141; the supporting memorandum, Docket No. 141-2, is cited herein as "EPA Mem.").[1] Plaintiffs' response to EPA's motion (Docket No. 165, cited herein as "Pl. Resp.") attempts to throw considerable confusion into what are, in reality, straightforward issues. The central question is not, as plaintiffs would have it, whether EPA "should be excused from dealing with [the problems of nutrient pollution] at all," Pl. Resp. at 44; rather, it is *who has the discretion to determine how*

---

[1] EPA's initial memorandum combined EPA's arguments in response to plaintiffs' Motion for Summary Judgment and in support of EPA's Motion to Dismiss or for Summary Judgment. To the extent that arguments made solely in response to plaintiffs' motion can be distinguished from those made in support of EPA's own motions, the former will not be further addressed in EPA's reply brief. See, e.g., EPA Mem. at 16-20, 29-30. EPA does not, however, abandon any arguments made in its original memorandum merely by properly limiting the scope of its reply brief.

*best to deal with that complicated scientific and technical problem* – the federal agency Congress entrusted with using its expertise to administer the Clean Water Act, or the plaintiffs?

The key points are easily summarized:  Plaintiffs petitioned EPA requesting that EPA promulgate numeric nutrient criteria for as many as 50 states, plus additional ocean waters.  EPA Mem. at 8-9; infra at 3-4.  Plaintiffs invoked Section 303(c)(4)(B) of the Clean Water Act, which directs EPA to promulgate water quality standards "in any case where the Administrator determines that a revised or new standard is necessary to meet the requirements of this chapter."  33 U.S.C. § 1313(c)(4)(B).  EPA denied the petition, explaining that although "the comprehensive use of federal rulemaking authority is [not] the most effective or practical means of addressing [plaintiffs'] concerns at this time," EPA will continue to work with states to address the undisputed problem of nutrient pollution, and in particular will continue to provide states with substantial technical assistance in developing their own numeric nutrient criteria.  EPA Mem. at 9, 24-25; July 29, 2011 Letter from Michael S. Shapiro, Pl. Ex. 15 ("Denial") at 1, 2-3; infra at 10-13.[2]  EPA further explained that although it is not exercising its Section 303(c)(4)(B) authority at this time, it has not foreclosed the possibility of doing so in the future.  Denial at 5-6; EPA Mem. at 9-10, 23-24.

Plaintiffs now seek review of EPA's denial of their rulemaking petition.  Agency denials of rulemaking petitions are, as a general rule, reviewable under the Administrative Procedure Act ("APA").  However, APA review is *not* available for actions "committed to agency discretion by law."  5 U.S.C. § 701(a)(2).  Plaintiffs have failed to demonstrate that this exception cannot apply to an agency's action in denying a rulemaking petition, or that there is "law to apply" to judge EPA's decision not to exercise its Section 303(c)(4)(B) authority at this time.  EPA Mem.

---

[2] As in the parties' opening briefs, the Bates stamped pages of the administrative record are cited by their concluding digits.

at 12-15; infra at 4-8.  Nor can plaintiffs sustain their extraordinary proposition that an agency's answer to a request for rulemaking must always be "yes" or "no," and never "not now, because some other approach would be more effective."  See infra at 9-10.  Plaintiffs have not, moreover, rebutted EPA's demonstration that an agency's decision not to devote limited agency resources to rulemaking, but rather to pursue some alternative means of reaching a statutory goal, is entitled to an extraordinary degree of deference – and that, viewed in light of that deferential standard, EPA's denial of plaintiffs' rulemaking petition is entirely reasonable.  EPA Mem. at 2, 12, 24-28; infra at 10-13.  If plaintiffs' Complaint is not dismissed, summary judgment should therefore be entered for EPA.

## II.  ARGUMENT

Plaintiffs understandably attempt to minimize the sweeping scope of the petition that gave rise to this matter; however, in order to put plaintiffs' claim that EPA unreasonably denied that petition in context, it is important to understand precisely what plaintiffs asked EPA to do:

> For the reasons set forth in greater detail below, EPA should adopt numeric water quality standards for the portion of the ocean protected by the Clean Water Act but outside the jurisdiction of any state and for all water bodies in all states for which numeric water quality standards controlling nitrogen and phosphorous pollution have not yet been established.  In the alternative, EPA should do this for the Northern Gulf of Mexico and for all waters of the United States within the Mississippi River Basin.  At a minimum, EPA should establish water quality standards to control nitrogen and phosphorous pollution in the mainstem of the Mississippi River and the Northern Gulf of Mexico.

Petition (Pl. Ex. 1) at 11-12; see also id. at 76 (identifying "petitioners' requests of EPA"), 77-78.  A determination that water quality standards are "necessary" is, of course, a predicate to EPA's promulgation of such standards under Section 303(c)(4)(B).  Plaintiffs' revisionist suggestion that they sought no more than such a determination, see, e.g., Pl. Resp. at 5, 22-23, nonetheless ignores the plain language of their petition.

Given that plaintiffs' petition *sought* rulemaking touching on as many as 50 states (to say nothing of additional waters outside the jurisdiction of those states), EPA naturally responded by explaining why it believes it is not the best or most effective approach to *use* its rulemaking authority on that scale at this time.  See EPA Mem. at 8-10, 24-28; see generally Denial.  EPA cannot now be faulted for answering the question plaintiffs asked, rather than devising some alternative approach of its own.  See Pl. Resp. at 43 (suggesting EPA could have established numeric nutrient criteria for at least one state in addition to Florida).  For the reasons discussed in greater detail below and in EPA's opening memorandum, EPA's denial of plaintiffs' petition was wholly reasonable and, if it is reviewed at all, should be upheld.

A.  **EPA's Decision Not To Exercise Its Rulemaking Authority Under Section 303(c)(4)(B) Is Not Reviewable.**

Plaintiffs begin by arguing that EPA's did not make a determination regarding whether new or revised standards are "necessary" in response to their administrative petition, and that EPA's "refusal" to do so is reviewable.[3]  Pl. Resp. at 5-6.  The cases that plaintiffs rely on, however, arose from (or simply discuss) agency failures to respond to a request at all.  See Christopher Vill. Ltd. P'ship v. Retsinas, 190 F.3d 310, 313 (5th Cir. 1999) (plaintiff requested increase in contract rent to cover costs of maintenance; HUD neither approved nor denied request before threatening foreclosure and demanding money to pay for repairs be placed in escrow); Reliable Home Health Care v. Thompson, No. Civ. A. 01-2343, 2002 WL 22025, at *7-*8 (E.D. La. Jan. 4, 2002) (recognizing distinction between unreviewable decision not to enter into repayment plan and agency refusal to consider request for such a plan).  Here, EPA *did*

---

[3] This argument is ultimately based on plaintiffs' flawed contention that an agency can deny a rulemaking petition only if it determines on the merits that the requested rule is not necessary, and not on the grounds that it has concluded that rulemaking is not the best or most effective use of agency resources.  See infra at 9-10.

- 4 -

respond to plaintiffs' petition, by denying it.  The fact that plaintiffs believe that EPA denied the petition for inappropriate reasons does not mean that the Denial itself does not exist.

Plaintiffs also argue at some length that agency denials of rulemaking petitions are reviewable under the APA.  See Pl. Resp. at 4, 7-10.  As a general rule, that is true; however, the APA expressly states that actions "committed to agency discretion by law" are not subject to judicial review.  5 U.S.C. § 701(a)(2).[4]  EPA's argument is not that this exception bars review of *all* rulemaking petition denials (which would clearly be wrong).  It is, instead, that if the decision whether to take some action is committed to agency discretion by law, then a refusal to take that action is unreviewable, even if that refusal comes in the form of a petition denial.  See EPA Mem. at 14-15.

Plaintiffs fail to distinguish cases that have reached this conclusion.  Contrary to plaintiffs' contention, Pl. Resp. at 9 n.8, in Conservancy of Southwest Florida v. U.S. Fish & Wildlife Service, 677 F.3d 1073 (11th Cir. 2012), the Eleventh Circuit did consider the general reviewability of rulemaking petition denials.  Conservancy of Sw. Fla., 677 F.3d at 1085 ("We do not suggest that the denial of a petition for rulemaking is always unreviewable, or even presumptively unreviewable.  Such a notion would be contrary to precedent" (citing Massachusetts v. EPA, 549 U.S. 497, 527-28 (2007)); see also 677 F.3d at 1085 ("Cases in which § 701(a)(2) precludes APA review are thus uncommon. . . . This, however, is such a case.").  The court nonetheless concluded that the substantive statute under which the plaintiffs in that case (the "Conservancy") had petitioned the agency provided no standard against which to judge the agency's exercise of discretion, and that therefore the agency's denial of the

---

[4] The reference to 5 U.S.C. § 701(a)(1) in EPA's opening memorandum, see Pl. Resp. at 4 n.4, is a typographical error.  As is clear from context and from EPA's quotations from the statute, EPA relies solely on the "committed to agency discretion" exception from APA review found in 5 U.S.C. § 701(a)(2).

- 5 -

Conservancy's petition was not reviewable. Conservancy of Sw. Fla., 677 F.3d at 1082, 1085. As to the claim that the court was addressing a "particular factual scenario," Pl. Resp. at 9 n.8, that is true, but plaintiffs miss the larger point: under the court's reasoning, if *any* statute does not provide criteria against which to judge a particular agency decision, then that decision is unreviewable even if made in response to a rulemaking petition.

As to Missouri Coalition for the Environment Foundation v. Jackson, 853 F. Supp. 2d 903 (W.D. Mo. 2012), the statement that the plaintiffs in that matter (the "Coalition") had not first petitioned the agency, Pl. Resp. at 8-9, is inaccurate. The Coalition had, in fact, done so; however, EPA had not responded to that petition. Mo. Coal., 853 F. Supp. 2d at 913. The court concluded that, to the extent the petition sought an exercise of EPA's discretion under Section 303(c)(4)(B), the court did not need to consider whether EPA's failure to respond to the petition constituted final agency action – because *even if it did,* that action would not be reviewable under the APA. See id.; see also Sierra Club v. United States Fish & Wildlife Service, No. 11-993, 2013 WL 1111285 (D.D.C. March 19, 2013), at *5, *11 (where decision was committed to agency discretion by law, that decision was unreviewable when made in response to petition under Administrative Procedure Act).

Nor is National Wildlife Federation v. Browner, No. 95-1811, 1996 WL 601451 (D.D.C. Oct. 11, 1996), aff'd 172 F.3d 1126 (D.C. Cir. 1997), Pl. Resp. at 9, 17-18, to the contrary. In National Wildlife the district court suggested that if the plaintiffs petitioned the agency under Section 303(c)(4)(B) (which they had not done), and the agency denied that petition "on the merits" or stated that it lacked authority to take a certain action (which, since there was no such petition, the agency also had not done), that denial would be a reviewable final agency action. Nat'l Wildlife, 1996 WL 601451, at *6. The court said nothing to suggest that if EPA responded

to a petition by – as it did here – concluding that rulemaking under Section 303(c)(4)(B) was not the most effective or practical means of proceeding at this time, and thus declined to reach "the merits," there would be any law to apply in reviewing the Agency's decision.[5]

Plaintiffs have not demonstrated that there is "law to apply" to judge EPA's decision not to proceed under Section 303(c)(4)(B) at this time. Initially, plaintiffs' suggestion that 5 U.S.C. § 701(a)(2) applies only to matters of national security or to nonenforcement decisions, Pl. Resp. at 12-13, is simply wrong. Notwithstanding the concurring opinion in Franklin v. Massachusetts, 505 U.S. 788 (1992) cited by plaintiffs, courts – including the Supreme Court and the Fifth Circuit – have found agency action to be committed to agency discretion in a wide variety of circumstances.[6] Plaintiffs' argument that various statutory or regulatory standards could be used to assess "a decision *under* § 303(c)(4)(B)," Pl. Resp. at 10 (emphasis added) is, moreover, beside the point. See generally Pl. Resp. at 10-22. Even assuming *arguendo* that plaintiffs are correct, EPA did not deny the petition based on a determination "under" Section 303(c)(4)(B); rather, it denied the petition because it concluded that proceeding with federal rulemaking under

---

[5] Northwest Environmental Advocates v. EPA, 268 F. Supp. 2d 1255 (D. Or. 2003), Pl. Resp. at 17-18, is similarly inapt. The factual background in that case is complicated, but the passage cited by plaintiffs is from the court's discussion of the reviewability of EPA's failure to act on – and specifically to reject – a bare-bones state implementation plan at the same time it rejected other state water quality criteria. See Nw. Envtl. Advocates, 268 F. Supp. 2d at 1264. The fact that the court concluded that standards applicable to state implementation plans can be used to review EPA's failure to reject such a plan simply does not translate to this context, where EPA was faced not with a discrete set of water quality standards but with a sweeping petition for nationwide rulemaking.

[6] See, e.g., Lincoln v. Vigil, 508 U.S. 182, 191 (1993) (citation omitted) (allocation of funds from lump-sum appropriation is committed to agency discretion; like non-enforcement decision, allocation of funds requires "a complicated balancing of a number of factors which are peculiarly within [the agency's] expertise," including whether resources are best spent on one program or another and which program best fits overall agency policy); Brazos Elec. Power Coop. v. Sw. Power Admin., 819 F.2d 537, 544 (5th Cir. 1987) (allocation of federal hydroelectric power to purchasers committed to agency discretion); FDIC v. Bank of Coushatta, 930 F.2d 1122, 1127-1129 (5th Cir. 1991) (issuance of directive requiring bank to submit plan to maintain required capital committed to agency discretion).

that provision is not the most effective way of addressing the undisputed problem of nutrient pollution at this time.  See Denial at 1, 6.  It is *that* decision that is committed to agency discretion by law.  EPA Mem. at 13-15; Conservancy of Sw. Fla., 677 F.3d at 1080-81 (statutes and regulations pertaining to designation of habitat did not govern initial decision whether to commence rulemaking to designate habitat).  As the D.C. District Court explained in a recent decision (issued after EPA's opening memorandum was filed), a statute that may provide guidance for reviewing an agency's substantive decisions may not be helpful in evaluating decisions "*which concern[] only if,* when, and/or how *the agency intends to proceed* with" a particular action.  Sierra Club, 2013 WL 1111285, at *8 (emphasis added); see also id. at *9 (substantive statute governing habitat review "does not provide any law from which the Court can determine whether the review . . . should occur now;" "[t]his type of determination, which may involve a myriad of factors, including internal management constraints, is the type of decision generally unsuitable for judicial review.") (citation omitted).

**B.    EPA's Denial of Plaintiffs' Rulemaking Petition Was Reasonable And Supported By The Administrative Record**.

Plaintiffs do not seriously address, let alone rebut, EPA's demonstration that even when an agency's decision not to engage in rulemaking is reviewable, that decision will be overturned only in "the rarest and most compelling of circumstances."  WWHT, Inc. v. Federal Commc'ns Comm'n, 656 F.2d 807, 818 (D.C. Cir. 1981); EPA Mem. at 2, 12.  Viewed in light of this highly deferential standard, EPA's denial of plaintiffs' petition is wholly reasonable and supported by the administrative record, and thus should be upheld.[7]

---

[7] EPA has never disputed that denial of a rulemaking petition is reviewed in light of any "underlying statutory criteria" that are applicable to the agency decision at issue.  See Pl. Resp. at 32; compare EPA Mem. at 12 n.7.  The passage that plaintiffs cite discusses only the standard of review, and plaintiffs' apparent view that a court may enforce its own view (or plaintiffs'

- 8 -

### 1. EPA properly responded to plaintiffs' petition by declining to proceed under Section 303(c)(4)(B) at this time.

There is no basis for plaintiffs' repeated suggestion that an agency's only options when faced with a rulemaking petition are to (1) grant the petition and engage in rulemaking, or (2) deny the petition by deciding *on the merits* that the requested rule is not needed.  See, e.g., Pl. Resp. at 1-2, 23, 29, 31, 33-37.  Plaintiffs' proposed definitive-yes-or-definitive-no rule would give administrative petitioners an extraordinary degree of control over agency agendas, and is squarely contrary to the weight of authority holding that agencies have broad discretion to set agency agendas and manage agency resources.  See EPA Mem. at 24; Massachusetts, 549 U.S. at 527 ("an agency has broad discretion to choose how best to marshal its limited resources and personnel to carry out its delegated responsibilities"); see also Defenders of Wildlife v. Gutierrez, 532 F.3d 913, 921 (D.C. Cir. 2008) (upholding denial of rulemaking petition where agency "was well aware" of statutory mandate to protect wildlife but "made a policy decision to focus its resources on a comprehensive strategy" rather than rulemaking).  Under plaintiffs' scheme, merely by filing an administrative petition requesting rulemaking any party could force an agency into immediately expending significant agency resources on a substantive assessment of the requested rule, regardless of whether in the agency's best judgment its mission would be better served by deploying its resources in some other manner.[8]  It is no answer to say that EPA

---

view) of the appropriate course of action under a statute rather than deferring to an agency's reasoned judgment.

[8] Plaintiffs' casual suggestion that it is acceptable to force an agency into making this decision because the agency can always change its mind later if circumstances alter, see Pl. Resp. at 29, ignores the very real burden that agencies face if they reverse course.  See, e.g., FCC v. Fox Television Stations, Inc., 556 U.S. 502, 515 (2009) (discussing requirement that agency explain change in policy); Hadley v. Chapman, 587 F.3d 273, 281-82 (5th Cir. 2009) (same).  Indeed, plaintiffs themselves argue that in response to their petition, EPA was required to either make a finding that water quality standards are necessary or "explain why its past pronouncements of necessity were no longer operative."  Pl. Resp. at 38-39.

would remain free in the end to decide whether federal numeric nutrient criteria were, in fact, "necessary" or not (see, e.g., Pl. Mem. at 38-39) – the problem is the effort that could be required to reach the point at which the Agency could even make such a decision, and the degree to which plaintiffs' proposed scheme would allow administrative petitioners to dictate an agency's priorities and use of resources.

It thus is not an improper "non-answer," Pl. Resp. at 3, for EPA to say that although exercising its rulemaking authority under Section 303(c)(4)(B) is not the most effective response to nutrient pollution at this time, it is not foregoing the possibility that it will follow that course in the future. See Nat'l Parks Conservation Ass'n v. U.S. Dep't of Interior, 794 F. Supp. 2d 39, 45 (D.D.C. 2011) (rejecting argument that denial of petitions is final only if agency forecloses taking course of action proposed by petitioners in the future). EPA simply was not required to decide, at plaintiffs' behest and on plaintiffs' timetable, whether federal numeric nutrient criteria for as many as 50 states are, or are not, substantively "necessary" to meet the requirements of the Act in order to deny plaintiffs' rulemaking petition.

### 2. EPA reasonably declined to proceed under Section 303(c)(4)(B) at this time.

Although EPA agreed with many of the environmental concerns expressed by the plaintiffs, it denied the petition on the grounds that it "believes that the use of its rulemaking authority, especially in light of the sweeping scope of the Petition, is not a practical or efficient way to address nutrients at a national or regional scale." Denial at 4; see also id. at 1. Instead, the Agency concluded, "the most effective and sustainable way to address widespread and pervasive nutrient pollution . . . is to build on [the Agency's existing] efforts and work cooperatively with states and tribes to strengthen nutrient management programs." Id. at 4; see also id. at 6 (agency is "exercising its discretion to allocate its resources in a manner that

supports targeted regional and state activities to accomplish our mutual goals of reducing [nutrient] pollution"); see generally EPA Mem. at 4-10. This approach is wholly consistent with EPA's 2011 Framework Memo, which is the most recent statement of Agency policy in this regard. See Framework Memo, Pl. Ex. 13, at 681 ("While EPA has a number of regulatory tools at its disposal, our resources can best be employed by catalyzing and supporting action by states that want to protect their waters from [nutrient] pollution.").

Plaintiffs assert that, regardless of Agency policy and the Agency's ongoing work with states, EPA's prior statements (as well as various other documents and studies) are such that EPA now has virtually no choice but to conclude that numeric nutrient criteria are "necessary" for one or more states. See Pl. Resp. at 33-39. This argument assumes that EPA was required to reach the substantive question of necessity, and could not properly deny the petition on the basis that it was not going to exercise its Section 303(c)(4)(B) authority at this time – an assumption that, as discussed in the preceding section, plaintiffs have failed to support. It would, moreover, be premature for the Court to consider the proper record basis for, or content of, a determination *that EPA has not made*, and any opinion on these points would be purely advisory.[9] Should the Court conclude that EPA's denial of the petition was both reviewable and arbitrary or capricious, the most it can do is remand the matter to the agency for further proceedings.

---

[9] The intervenors also discuss information that they contend EPA could (or must) consider in determining whether numeric nutrient criteria are "necessary," other factors EPA might consider in making such a determination, the proper scope of a necessity determination, and various other issues related to EPA's exercise of its Section 303(c)(4)(B) authority. See, e.g., Intervening States' Memorandum In Support Of EPA's Motion for Summary Judgment (Docket No. 153) at 10-16; National Association of Clean Water Agencies' Memorandum In Support Of EPA's Cross-Motion For Summary Judgment (Docket No. 155) at 4-10; Non-State Intervenor Defendants' Joint Memorandum In Support Of EPA's Cross-Motion For Summary Judgment (Docket No. 161) at 11-18. Because these issues are not before the Court, they will not be further discussed; however, EPA reserves the right to contest any of the intervenors' arguments in any future proceeding.

Nor have plaintiffs shown that EPA's decision not to exercise its Section 303(c)(4)(B) authority was inconsistent with EPA's role as a reviewer of state water quality standards. See Pl. Mem. at 20, 29-30. Unlike Sections 303(c)(1)-(3) and (c)(4)(A), Section 303(c)(4)(B) is not part of the tiered process in which states submit revised or new water quality standards to EPA for approval or disapproval and EPA is required to promulgate federal standards if it disapproves state standards and the state does not fix them within a certain time period. See EPA Mem. at 3-4. Section 303(c)(4)(B) is, instead, a backstop grant of discretionary federal authority to promulgate water quality standards when EPA deems it "necessary to meet the requirements of [the Act]." 33 U.S.C. § 1313(c)(4)(B).

The Denial and the remainder of the administrative record document EPA's work with states to address the problems of nutrient pollution (and states' progress in that regard), as well as the effort that would be required for EPA to engage in the sweeping rulemaking that plaintiffs requested – or, indeed, a rulemaking even a fraction of that size and scope. See EPA Mem. at 4-9, 24-28; Denial at 2-5. Plaintiffs offer nothing to rebut this showing, opting instead to re-write their petition after the fact by stating casually that EPA should promulgate nutrient criteria "at least a second time," while ignoring the fact that what they actually requested was that EPA do so for a *minimum* of ten states. Pl. Resp. at 43; supra at 3-4.[10] Plaintiffs' assertion that EPA could use information already in its possession to develop additional numeric nutrient criteria with relatively little additional effort, Pl. Resp. at 43-44, is sheer speculation. As such, it cannot overcome the deference due EPA's expert judgment as to the information the Agency would

---

[10] This is not to suggest that EPA could not have denied plaintiffs' petition in part and granted it in part, choosing to exercise its Section 303(c)(4)(B) rulemaking authority to some lesser extent than requested by plaintiffs. The fact that EPA could reasonably have taken this course does not, however, mean that it was *unreasonable* for EPA to take the petition plaintiffs submitted at face value and to respond accordingly.

need to gather, the resources this would require, and the amount of time and effort needed even to determine whether numeric nutrient criteria are "necessary," let alone to promulgate such criteria for even a single state.

### III.  CONCLUSION

For the foregoing reasons and the reasons stated in EPA's opening Memorandum, plaintiffs' Complaint should be dismissed or, in the alternative, summary judgment should be entered for EPA.

May 10, 2013                                                  Respectfully submitted,

Ignacia S. Moreno
Assistant Attorney General
United States Department of Justice
Environment and Natural Resources
    Division

*/s/ Angeline Purdy*
By:  _____
Angeline Purdy
Environmental Defense Section
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
Voice: (202) 514-0996
Fax: (202) 514-8865
e-mail: angeline.purdy@usdoj.gov

OF COUNSEL:

Peter Z. Ford
Office of General Counsel
United States Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 10, 2013, I filed the foregoing Reply via the CM/ECF system, which will electronically serve all counsel of record.

*/s/ Angeline Purdy*

_____
Angeline Purdy