UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

GULF RESTORATION NETWORK, ET                    CIVIL ACTION
AL.

VERSUS                                          NO: 12-677

LISA P. JACKSON, ADMINISTRATOR                  SECTION: "A" (3)
OF THE UNITED STATES
ENVIRONMENTAL PROTECTION
AGENCY, ET AL.

## ORDER AND REASONS

The following motions are before the Court: **Plaintiffs' Motion for Summary**

**Judgment (Rec. Doc. 133)**; **Motion to Dismiss or, in the Alternative, for**

**Summary Judgment (Rec. Doc. 141)** filed by defendants Lisa P. Jackson,

Administrator, and the United States Environmental Protection Agency (collectively

"EPA").[1] The motions, scheduled for submission on July 17, 2013, are before the Court on

the briefs without oral argument.[2] For the reasons that follow, Plaintiffs' motion for

summary judgment is GRANTED IN PART AND DENIED IN PART and EPA's motion for

summary judgment is DENIED.

## I.    Background

Plaintiffs are various not-for-profit organizations that strive to protect the

environment. Plaintiffs have filed this action to assert alleged violations of the

Administrative Procedure Act ("APA") by EPA. The lawsuit derives from EPA's July 29, 2011

_____

[1] Numerous state and non-state parties have intervened as defendants to oppose the
relief that Plaintiffs seek in this action.

[2] Oral argument has been requested but the Court is persuaded that the copious
memoranda that the parties have provided are sufficient to address the issues presented.

denial of a July 30, 2008 rule-making petition that Plaintiffs filed with the agency.[3]

## A.     The Petition

The July 30, 2008 Petition for Rulemaking Under the Clean Water Act ("the Petition") is Exhibit A to Plaintiffs' Amended Complaint for Declaratory and Injunctive Relief (Rec. Doc. 22). The Petition explains that high levels of nitrogen and phosphorous pollution are devastating the Gulf of Mexico as evidenced by a large "dead zone" or "hypoxic zone" in the northern Gulf. Plaintiffs point out that the states in the Mississippi River Basin have no numeric water quality standards for phosphorous in rivers or streams or for nitrogen in any waters. (Rec. Doc. 22-1, The Petition at 3). And most states do not attempt to limit nitrogen and phosphorous discharges in NPDES permits.[4] Because the states do not sufficiently limit levels of nitrogen and phosphorous in their own waters, the Mississippi River is inundated with excess levels of harmful nitrogen and phosphorous, thereby leading to the "dead zone" near the mouth of the river.

The crux of the Petition is Plaintiffs' dissatisfaction with what they characterize as EPA's "hands-off approach" to dealing with the problem of nitrogen and phosphorus pollution in the United States. Acknowledging that the Clean Water Act assigns responsibility for such pollution control to the states in the first instance, Plaintiffs contend that most states to date have done little or nothing to meaningfully control the levels of nitrogen and phosphorous that pollute their waters, and that they have even less political will to protect downstream waters. (Rec. Doc. 22-1, The Petition at 2). Plaintiffs explain that

---

[3] Defendants have not challenged Plaintiffs' standing to bring this action.

[4] An NPDES (National Pollutant Discharge Elimination System) permit allows the permitee to legally discharge into the navigable waters of the United States limited quantities of a pollutant or combination of pollutants that would otherwise be banned. 33 U.S.C.A. § 1342 (West 2001 & Supp. 2013).

over the years EPA has offered many plans and methods for addressing the nitrogen and

phosphorous pollution problem but those plans have failed because they have never been

backed by direct action by EPA. Recognizing that Congress gave EPA authority to step in and

address the nitrogen/phosphorus problem in light of the states' clear failure to do so,

Plaintiffs requested under Section 4 of the APA, 5 U.S.C. § 553(e),[5] that EPA use its

rulemaking powers to promulgate federal standards to control nitrogen and phosphorous

pollution. (*Id.* at 4).

The rulemaking powers referenced in the petition derive from § 303(c)(4) of the

Clean Water Act ("CWA"), 33 U.S.C. § 1251, et seq. Section 303(c)(4) provides:

> The Administrator shall promptly prepare and publish proposed regulations
> setting forth a revised or new water quality standard for the navigable waters
> involved—
>> (A) if a revised or new water quality standard submitted by such
>> State under paragraph (3) of this subsection for such waters is
>> determined by the Administrator not to be consistent with the
>> applicable requirements of this chapter, or
>> **(B) in any case where the Administrator determines**
>> **that a revised or new standard is necessary to meet the**
>> **requirements of this chapter.**
> The Administrator shall promulgate any revised or new standard under this
> paragraph not later than ninety days after he publishes such proposed standards,
> unless prior to such promulgation, such State has adopted a revised or new water
> quality standard which the Administrator determines to be in accordance with
> this chapter.

33 U.S.C. § 1313(c)(4)(A), (B) (West 2001) (emphasis added).

Specifically, Plaintiffs urged EPA to invoke its authority under § 303(c)(4)(B), the

emphasized language above, to impose federal numeric water quality standards for the

portion of the ocean protected by the CWA but outside the jurisdiction of any state and for

all water bodies in all states for which numeric water quality standards controlling nitrogen

---

[5] Section 553 of the Administrative Procedure Act, entitled Rule Making, requires that
each federal agency "give an interested person the right to petition for the issuance, amendment,
or repeal of a rule." 5 U.S.C.A. § 553(e) (West 2007).

and phosphorous pollution have not yet been established. (Rec. Doc. 22-1, The Petition at 4).

Alternatively, Plaintiffs proposed that EPA do this for the Northern Gulf of Mexico and for

all waters of the United States within the Mississippi River Basin. (*Id.*). At a minimum,

Plaintiffs urged EPA to establish water quality standards to control nitrogen and

phosphorous pollution in the mainstem of the Mississippi River and the Northern Gulf of

Mexico. (*Id.*). Additionally, Plaintiffs urged EPA to establish TMDLs for nitrogen and

phosphorous for the Gulf of Mexico, the Mississippi River, and each Mississippi River

tributary that fails to meet the numeric standards set for nitrogen and phosphorous for

which a TMDL[6] had not already been prepared. (*Id.*). At the least, Plaintiffs suggested that

EPA should prepare a TMDL for nitrogen and for phosphorous for the mainstream of the

Mississippi River and the Northern Gulf of Mexico. (*Id.*).

> **B.    EPA's Denial**

On April 11, 2011, Plaintiffs wrote EPA threatening to take legal action if EPA failed to

respond to the Petition by June 30, 2011, which would be a full three years after Plaintiffs

filed the Petition. (Rec. Doc. 133, Exh. 14 to Plaintiffs' MSJ). Plaintiffs argued that EPA's

failure to provide a timely decision on the Petition was unreasonable.

EPA issued its formal response ("the Denial") on July 29, 2011, and the Denial is

Exhibit B to Plaintiffs' Amended Complaint. (Rec. Doc. 22). EPA did not take issue with

Plaintiffs' contentions regarding the significant and serious water qualify problems caused

by nitrogen and phosphorous pollution. EPA explained the various approaches that it had

been employing over the years to combat the existential problem. But EPA disagreed that

use of its federal rulemaking authority would be the most effective or practical means of

---

[6] Total Maximum Daily Load. Plaintiffs are not challenging EPA's denial of their request
that EPA establish TMDLs. (Rec. Doc. 141, EPA's Memo in Support at 8 n.5).

addressing the nitrogen/phosphorous problem at this time. (Rec. Doc. 22-2, The Denial at 1). Instead, EPA explained that in its judgment the most effective and sustainable way to address widespread and pervasive nutrient pollution in the Mississippi-Atchafalaya River Basin ("MARB") and elsewhere would be to build on its earlier efforts and to continue to work cooperatively with states and tribes to strengthen nutrient management programs. (*Id.* at 4). EPA characterized Plaintiffs' proposed rulemaking solution as "unprecedented and complex" as well as "highly resource and time intensive." (*Id.*). EPA explained that efforts to promulgate federal numeric nutrient criteria ("NNC") for 50, 31, or even 10 states at one time would involve EPA staff from across the entire agency, as well as support from technical experts outside the agency. (*Id.*). Then after the daunting task of completing a rulemaking process of the magnitude proposed, EPA would be faced with sizable regulatory and oversight burdens. (*Id.* at 4). EPA summarized its position by stating that it did not believe that the use of its rulemaking authority, especially in light of the sweeping scope of the Petition, would be a practical or efficient way to address nutrient pollution at a national or regional scale. (*Id.*).

EPA also reiterated its long-standing policy, which it viewed as consistent with the CWA, of encouraging states to develop and adopt water standards in the first instance. (Rec. Doc. 22-2, The Denial at 5). EPA clarified that it was not concluding that NNC were not necessary to meet CWA requirements but rather that EPA would exercise its discretion to continue in its partnership efforts with the states, not foreclosing its ability to resort to federal standards at some future time should that become necessary. (*Id.*).

### C.     The Complaint

Plaintiffs filed their Original Complaint on March 13, 2012, and their Amended Complaint (Rec. Doc. 22) on April 3, 2012. The federal complaint alleges that the Denial

violates the APA for two reasons: 1) the Denial is not supported by reasons that conform to the relevant statutory factors in § 303(c)(4)(B) of the CWA, including a reasoned explanation as to why revised or new water quality standards are not "necessary" to meet the requirements of the CWA; and 2) the Denial is contrary to the undisputed evidence that NNC are "necessary" to meet the requirements of the CWA. Plaintiffs request that the Court declare that EPA's denial of the Petition was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law in violation of the APA, 5 U.S.C. § 706(2)(A), and the CWA, 33 U.S.C. § 1313(c)(4)(B). Plaintiffs move the Court to order EPA to provide an adequate response within 90 days. (Rec. Doc. 22, Amended Comp. ¶ 5).

## II.   Discussion

### A.   EPA's Motion to Dismiss

EPA moves to dismiss Plaintiffs' complaint for lack of subject matter jurisdiction. Noting that 5 U.S.C. § 701(a)(2) excepts from judicial review agency action that is "committed to agency discretion by law," EPA argues that this Court lacks jurisdiction to review EPA's decision not to exercise its rulemaking authority under § 303(c)(4)(B) of the CWA. EPA contends that § 303 places no meaningful limits on the Administrator's discretion to make the necessity determination that is a precondition for promulgating federal water quality standards. EPA contends that the statute is so broadly drawn that a determination under § 303(c)(4)(B) is committed to agency discretion by law thereby rendering the denial of EPA's rulemaking petition unreviewable by a federal court. (Rec. Doc. 141, EPA's MTD Memo at 2).

In opposition, Plaintiffs contend that EPA's position effectively seeks a sweeping exemption from judicial oversight by suggesting that the agency be given complete freedom from accountability for refusing to exercise its authority under § 303(c)(4)(B) of the CWA.

Plaintiffs point out that the challenge presented by their complaint is EPA's refusal to make—one way or the other—the "necessity" determination that § 303(c)(4)(B) requires as a prerequisite to the promulgation of federal water quality control standards. Plaintiffs argue that *Massachusetts v. EPA*, 549 U.S. 497 (2007), demonstrates that EPA had no discretion to refuse to make a necessity determination in response to Plaintiffs rulemaking petition, and therefore its action was arbitrary and capricious or contrary to law. Plaintiffs contend that *Massachusetts v. EPA* stands for the proposition that the denial of a rulemaking petition is reviewable under the APA even where other agency inaction might not be.

The Denial was a final agency action reviewable pursuant to 5 U.S.C. §§ 704 & 706(2)(A).[7] EPA's motion to dismiss is premised on the exception to review created by § 5 U.S.C. § 701(a)(2).

---

[7]

Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

5 U.S.C. § 704 (West 2007).

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—
    (2) hold unlawful and set aside agency action, findings, and conclusions found to be—
        (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . .

5 U.S.C.A. § 706(2)(A) (West 2007).

In *Heckler v. Chaney*, 470 U.S. 821 (1985), the Supreme Court provided an in depth explanation of those situations where the § 701(a)(2) exception applies to preclude judicial review, *i.e.*, where agency action is committed to agency discretion by law. At the outset it is important to note that § 701(a)(2) only has potential application where Congress has not affirmatively expressed an intent to preclude judicial review. *Id.* at 830. But where Congress enacts a statute that is "drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion," courts will infer that Congress has "committed" the decision-making to the agency's judgment absolutely. *Id.* In other words, if no judicially manageable standards are available for judging how and when an agency should exercise its discretion, then it is impossible to evaluate agency action for "abuse of discretion." *Id.* This is commonly referred to as the "no law to apply" standard. *Id.* (*quoting Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 413 (1971), *abrogation on other grounds recognized by Califano v. Sanders*, 430 U.S. 99 (1977)). The exception to review created by § 5 U.S.C. § 701(a)(2), has always been recognized to be a very narrow one. *Overton Park*, 401 U.S. at 410.

This Court finds EPA's arguments regarding subject matter jurisdiction to be unpersuasive. It is important to remain mindful of what Plaintiffs are and are not seeking via this lawsuit. Plaintiffs are not seeking to have this Court either elide or take up in the first instance the necessity determination that § 303(c)(4)(B) of the Clean Water Act requires as a prerequisite to EPA's rulemaking authority under that section of the statute. And therefore Plaintiffs' complaint does not implicate the question of whether the necessity determination itself is guided by sufficient law to render it subject to judicial review. Plaintiffs are not seeking to have this Court order EPA to promulgate federal nutrient criteria. What Plaintiffs are challenging in this lawsuit is EPA's refusal to make either an affirmative or negative

necessity determination in response to Plaintiffs' rulemaking petition, and EPA's reliance on non-statutory factors in declining to make that determination.[8] This Court agrees with Plaintiffs' contention that the issues before the Court at this juncture—whether EPA could refuse to make a necessity determination and do so based on non-statutory factors—are legal questions that this Court can decide without eroding any of the deference owed to EPA. EPA's motion to dismiss for lack of subject matter jurisdiction is therefore DENIED.

### B.    The Parties' Cross Motions for Summary Judgment

The Clean Water Act itself gives no *express* instructions regarding the factors that EPA can or cannot consider when it makes a necessity determination, and it does not expressly limit EPA's discretion to pretermit the "necessity" question for the nonce. In fact, in *Heckler v. Chaney*, the Supreme Court specifically approved of an agency's use of the type of non-statutory "administrative" factors that EPA cited in the Denial when recognizing the great discretion that an agency has when declining to take enforcement action. 470 U.S. at 831-32. It would seem then that Plaintiffs' challenge to the Denial in this action turns on the breadth of the more recent *Massachusetts v. EPA* decision, and whether the holding in that case, which dealt with a different environmental statutory scheme but specifically with a petition for rulemaking, applies inescapably with equal force to § 304(c)(4)(B) of the CWA.

The dispute in *Massachusetts v. EPA* arose out of EPA's denial of a rulemaking petition asking EPA to regulate greenhouse gas emissions from new motor vehicles under §

---

[8] The Court recognizes that in paraphrasing Plaintiffs' aims in this lawsuit it may be slightly reframing or recasting Plaintiffs' claims to some extent. Plaintiffs tried to craft their Amended Complaint as asserting two distinct claims for relief, the second of which appears to be an oblique way of having the Court make the necessity determination that Plaintiffs wanted EPA to make. But Plaintiffs seem to recognize in their briefing that it would be inappropriate for this Court to make a § 304(c)(4)(B) necessity determination in the first instance.

202 of the Clean Air Act.[9] 549 U.S. at 509. The EPA denied the petition based on the erroneous belief that it lacked the legal authority to regulate such emissions, but EPA had taken the additional step of explaining that even if it had legal authority to regulate in that area it would nonetheless be unwise to do so at the time. *Id.* at 511. In declining to regulate, EPA had explained that it had residual uncertainties regarding the effects of greeenhouse gases, and that regulations like those that the plaintiffs had proposed would constitute a piecemeal approach to climate change, and would likely conflict with other administration priorities and the President's ability to negotiate with developing countries regarding their own greenhouse gas emissions. *Id.* at 513-14. The plaintiffs in that case filed suit to challenge EPA's denial of their rulemaking petition.

The majority concluded that EPA's explanation for why it would decline to regulate at present rested on reasoning divorced from the statutory text. *Id.* at 532. The Court recognized that EPA's authority to regulate under the statute was conditioned on the formation of a "judgment," but the judgment made must relate to the constraints imposed by the statutory text itself. Congress's use of the word "judgment" could not be treated as "a roving license to ignore the statutory text." *Id.* at 533. Instead, the statutory text serves as a "direction to exercise discretion within defined statutory limits." Once EPA responds to a petition for rulemaking, its reasons for action or inaction must conform to the authorizing

---

[9]  The pertinent Clean Air Act statutory text that was at issue in *Massachusetts v. EPA* is as follows:

> The Administrator shall by regulation prescribe (and from time to time revise) in accordance with the provisions of this section, standards applicable to the emission of any air pollutant from any class or classes of new motor vehicles or new motor vehicle engines, **which in his judgment cause, or contribute to, air pollution which may reasonably be anticipated to endanger public health or welfare . . . .**

42 U.S.C.A. § 7521(a)(1) (West 2013) (emphasis added).

statute. *Id.* So in the case of the rulemaking petition filed under § 202 of the Clear Air Act, EPA could avoid taking further action only if it were to determine that greenhouse gases do not contribute to climate change or if it were to provide some reasonable explanation as to why it could not or would not exercise its discretion to determine whether they do. *Id.* But EPA could not validly decline to regulate by citing policy judgments that have nothing to do with whether greenhouse gas emissions contribute to climate change. *Id.* The Court summed up by stating that EPA had offered no reasoned explanation for its refusal to decide whether greenhouse gases cause or contribute to climate change. *Massachusetts v. EPA*, 549 U.S. at 534. Therefore, EPA's action was arbitrary, capricious, or otherwise not in accordance with law. *Id.* (*quoting* 42 U.S.C. § 7607(d)(9)(A)).

Plaintiffs suggest that the instant action bears a striking resemblance to *Massachusetts v. EPA* in at least two key respects. First, both the Clean Air Act statutory provision at issue in *Massachusetts v. EPA* and § 303(c)(4)(B) of the CWA require a technical determination that when made in the affirmative triggers a non-discretionary duty for EPA to regulate pollutants. And second, in both cases EPA declined to weigh the scientific evidence necessary to make the required technical determination choosing instead to avoid the decision altogether by relying upon non-statutory policy concerns grounded in the complexity of the consequences flowing from an affirmative determination. Plaintiffs contend that *Massachusetts v. EPA* demonstrates that a necessity determination under § 303(c)(4)(B) of the CWA must be based on information regarding water quality, *i.e.*, scientific and technical criteria. Plaintiffs argue that nothing in the statutory language of the CWA allows for extraneous concerns pertaining to bureaucratic preferences to factor into the determination. In short, Plaintiffs posit that *Massachusetts v. EPA* demonstrates that EPA has a clear statutory obligation to determine one way or the other whether numeric

11

nutrient criteria are necessary to meet the requirements of the CWA and to do so based on scientific data related to water quality.

Both § 202 of the Clean Air Act, at issue in *Massachusetts v. EPA*, and § 303(c)(4)(B) of the CWA, at issue in this case, involve a discretionary agency determination that serves as a restraint to federal action. *Massachusetts v. EPA* acknowledges the highly deferential and limited scope of review that applies to the denial of a petition for rulemaking, 549 U.S. at 527-28, and the holding of the decision is rather narrow: The discretion surrounding a threshold determination like the one in § 202 of the Clean Air Act, and by implication like the necessity determination required by § 303(c)(4)(B) of the CWA, is not necessarily unlimited; it is in fact bounded by the text of the authorizing statute. *See Massachusetts v. EPA*, 549 U.S. at 533.

But perhaps the most important aspect of *Massachusetts v. EPA* for the case at bar is the Court's implicit conclusion that EPA lacks the discretion to simply decline to make the threshold determination in response to a rulemaking petition even where the statutory text does not explicitly require it to do so. In fact, the dissenting Justices found this aspect of the decision to be particularly troubling. *Id.* at 550 (Scalia, J., dissenting) ("Where does the CAA say that the EPA Administrator is required to come to a decision on this question whenever a rulemaking petition is filed? The Court points to no such provision because none exists."). As Justice Scalia pointed out in his dissenting opinion, the Court's conclusion that EPA lacked the discretion to decline to make a "judgment" was not derived from the statutory text itself, the Court focusing instead on the fact that a petition for rulemaking was the source of the dispute.

This import of the *Massachusetts v. EPA* decision for the instant case is clear. EPA could not simply decline to make a necessity determination in response to Plaintiffs' petition

for rulemaking. In its attempts to avoid this outcome, EPA took great pains in its memoranda to distinguish the text of the Clean Air Act provision at issue in *Massachusetts v. EPA* from the CWA provision at issue in this case. But efforts to distinguish the text of the two statutes in order to demonstrate that *Massachusetts v. EPA* does not compel a necessity determination are futile because, as explained by the dissenting Justices, the Court's conclusion that EPA lacked discretion to sidestep making a "judgment" was not statutorily based. Simply, just as EPA's response to the rulemaking petition in *Massachusetts v. EPA* was contrary to law because EPA did not make a "judgment," the Denial was contrary to law because EPA did not make a necessity determination.

Of course Plaintiffs herein challenge not only EPA's failure to make a necessity determination but also EPA's reliance on non-scientific data when responding to the rulemaking petition. Plaintiffs believe that *Massachusetts v. EPA* also compels the conclusion that EPA cannot rely on non-scientific factors when it does make a necessity determination under § 30(c)(4)(B). To the contrary, *Massachusetts v. EPA* does not stand for the broad proposition that every discretionary EPA determination that serves as a restraint or hurdle to federal action must be based on scientific data as opposed to policy judgments, and it does not stand for the proposition that EPA is precluded from relying on factors not expressly mentioned in the authorizing statute. Rather, the lesson of *Massachusetts v. EPA* is that EPA cannot ignore a specific statutory mandate that expressly curtails the exercise of its discretion when it denies a request for rulemaking. Having concluded that the plain text of § 202 of the Clean Air Act required reasoning grounded in science, EPA's reliance on non-scientific policy concerns as a basis to deny the rulemaking petition was not in accordance with law. But again, it was the explicit text of the authorizing statute in *Massachusetts v. EPA* that compelled the outcome in that case. The authorizing

13

statutory text itself contained the limiting language that convinced the Court that EPA's "judgment" had to be grounded in science.

Plaintiffs have tried in vain to point to explicit text in § 303(c)(4)(B) of the CWA that curtails EPA's discretion by limiting the factors that it can consider when making a necessity determination to those grounded in science alone but they cannot do so. The statutory text is simply not there and Plaintiffs recognize as much. (Rec. Doc. 165, Plaintiffs' Opposition at 26). But Plaintiffs take the position that the analysis is not limited to the authorizing text of § 303(c)(4)(B) of the CWA itself, and that the regulatory scheme of the CWA as a whole forces the necessity determination to be one grounded in science alone. (*Id.*).

*Massachusetts v. EPA* does not necessarily preclude the Act-wide search for discretion-limiting language that Plaintiffs propose but federal regulation of state waters under the CWA is fundamentally different than federal regulation of greenhouse gas emissions under the Clean Air Act. Under the Clean Air Act the states have no role in regulating the emission of air pollutants from new motor vehicles. Thus, in the absence of federal regulation there is no regulation whatsoever. But the CWA is by design a states-in-the-first-instance regulatory scheme. *See* 33 U.S.C.A. § 1251(b) (West 2001) ("It is the policy of Congress to recognize, preserve, and protect ***the primary responsibilities and rights of States*** to prevent, reduce, and eliminate pollution . . . and to consult with the Administrator in the exercise of his authority under this chapter.") (emphasis added). Under the CWA the states are charged with adopting water quality standards for their territorial waters and EPA exercises oversight, stepping in only when the states demonstrate that they either cannot or will not comply. Thus, the necessity determination in § 303(c)(4)(B) of the CWA is more than a mere speed bump on federal regulation because by design it serves as a hurdle to federal jurisdiction—a hurdle that EPA must overcome before it moves in to

14

preempt a state's sovereign authority to regulate its own waters.

The import of the foregoing discussion is that while statutory differences in the Clean Air Act and the CWA may be irrelevant for answering the question of whether EPA must make a necessity determination in the first instance, they are not only relevant but controlling on the question of the types of factors that EPA can or cannot consider when actually making the necessity determination. Nothing in the authorizing statutory text of the CWA expressly precludes EPA from considering the very factors that it cited in the Denial. Thus, the Court cannot grant Plaintiffs' motion for summary judgment insofar as Plaintiffs seek to have this Court rule as a matter of law a necessity determination under § 303(c)(4)(B) is limited solely to scientific data.[10]

In sum, the Court is persuaded that *Massachusetts v. EPA* requires EPA to conduct a necessity determination in response to Plaintiffs' rulemaking petition. The Court therefore remands this matter to EPA for further action consistent with the requirements of *Massachusetts v. EPA*. Plaintiffs have requested that the Court order EPA to take action within 90 days but the Court is persuaded that 180 days is a more reasonable window of time.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that **Plaintiffs' Motion for Summary Judgment (Rec. Doc. 133)** is **GRANTED IN PART AND DENIED IN PART** as explained above. This matter is remanded to EPA for further proceedings. EPA shall respond to Plaintiffs' rulemaking petition in a manner consistent with the requirements of *Massachusetts v. EPA* within 180 days from entry of this Order;

---

[10] In fact, in *Massachusetts v. EPA* the Court specifically declined to preclude EPA from citing policy concerns to "inform" EPA's actions on remand. 549 U.S. at 534-35.

**IT IS FURTHER ORDERED** that the **Motion to Dismiss or, in the Alternative, for Summary Judgment (Rec. Doc. 141)** filed by defendants Lisa P. Jackson, Administrator, and the United States Environmental Protection Agency is **DENIED**.

September 20, 2013

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE

16