UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

—————————————————————— )
 )
GULF RESTORATION NETWORK, et al. )
 )
　　　Plaintiffs, )
 )
　　　　v. )
 )
GINA McCARTHY Administrator, United )     12-cv-00677-JCZ-DEK
States Environmental Protection Agency, )
and UNITED STATES )
ENVIRONMENTAL PROTECTION )
AGENCY )
 )
　　　Defendants. )
—————————————————————— )

## **REPLY IN SUPPORT OF MOTION FOR STAY**

　　　Plaintiffs Gulf Restoration Network, et al.'s (collectively "Plaintiffs") opposition to

EPA's Motion for Stay focuses heavily on EPA's allegedly dilatory approach to (1) seeking a

stay in this matter, and (2) promoting the development of appropriate water quality standards.

See Plaintiffs' Opposition to Motion for Stay Pending Appeal, ECF No. 181 ("Pl. Opp.") at 2-3,

5, 7-9.  As to the first point, as EPA explained it its opening memorandum, the fact that EPA did

not previously seek a stay was not due to mere "hemm[ing] and haw[ing]," Pl. Opp. at 2; rather,

it was the result of a combination of circumstances, most prominently the need to complete a

multi-stage review process at both DOJ and EPA to obtain authorization to pursue an appeal.

EPA's Memorandum in Support of Motion for Stay Pending Appeal, ECF No. 180-2 ("EPA Stay

Mem.") at 7-8.

　　　As to the second point, Plaintiffs' overall dissatisfaction with EPA's approach to the

development of appropriate nutrient criteria and with the pace of EPA actions is not a basis for

denying EPA's Motion for Stay. Plaintiffs have offered nothing to rebut EPA's demonstration that a stay is warranted, and EPA's Motion for Stay should therefore be granted.

## A.    EPA WILL SUFFER IRREPARABLE INJURY WITHOUT A STAY

As discussed in EPA's opening Memorandum, unless the Court's Order is stayed, EPA's appeal will very likely be moot – a circumstance that courts have found sufficient to demonstrate irreparable injury. See EPA Stay Mem. at 14-15. Plaintiffs cite several cases that purportedly stand for the proposition that the risk of mootness is not an irreparable harm. Pl. Opp. at 5-6. What is striking about the cases Plaintiffs cite, however, is that although their chosen cases recognize that multiple courts have so held, *they all go on to reach a different conclusion*. For example, in In re Fiesta Inn & Suites, LP, No. 09-51355-C, 2009 WL 5195961 (W.D. Tex. Dec. 21, 2009), the court stated that "[a] majority of courts have held that a risk of mootness, standing alone, does not constitute irreparable harm." Fiesta Inn, 2009 WL 5195961 at *3 (citation omitted). The court went on, however, to agree with courts holding that the risk of mootness "while not decisive, *would satisfy the requirement of showing some irreparable injury* – enough to get on the scoreboard with respect to this issue." Id. (italic emphasis added, citation omitted); see also In re General Motors Corp., 409 B.R. 24, 31 (S.D.N.Y. 2009) (assuming without deciding that threat of mootness satisfied requirement of showing some irreparable injury).[1]

Similarly, in In re Adelphia Communications Corporation, 361 B.R. 337 (S.D.N.Y. 2007), the court reasoned as follows:

> Courts are divided, and the Second Circuit has not yet spoken, on the issue of whether the risk that an appeal may become moot in the absence of a stay pending appeal satisfies the irreparable injury requirement. A majority of courts have held that a risk of mootness,

---

[1] The "intolerable result" that concerned the court if a stay were granted in General Motors, see Pl. Opp. at 6, was the potential "death of a company" and the accompanying "staggering" public injury if that company were forced to liquidate. General Motors, 409 B.R. 24, 33. Plaintiffs have identified no such potential negative consequences of a stay in this case. See infra at 5-7.

> standing alone, does not constitute irreparable harm.[]  However, several courts,
> including ones within this Circuit, have held to the contrary.[].  While Appellees have
> strained to distinguish each of these cases, *the fact is that loss of appellate rights is a
> quintessential form of prejudice.  Thus, where the denial of a stay pending appeal risks
> mooting <u>any</u> appeal of <u>significant</u> claims of error, the irreparable harm requirement is
> satisfied.*

<u>In re Adelphia</u>, 361 B.R. at 347-48 (internal quotations and citations omitted, italic emphasis

added).  As discussed in EPA's opening memorandum at 9-14 and <u>infra</u> at 7, EPA has raised

"significant claims of error."  Plaintiffs do not dispute that these claims would in all likelihood

be rendered moot if the Court's order is not stayed pending appeal.  Nor do Plaintiffs offer any

sound reason that the Court should ignore well-reasoned cases – cases cited by Plaintiffs

themselves – recognizing that that the loss of an appeal right is a "quintessential form of

prejudice" and, hence, an irreparable injury.

    The risk that EPA's appeal will become moot is not, moreover, the only irreparable harm

that EPA will suffer if the Order is not stayed.  Plaintiffs have not rebutted EPA's demonstration

that the status quo would be irretrievably altered if EPA is required to make a necessity

determination, regardless of whether that determination is positive or negative.  <u>See</u> EPA Stay

Mem. at 15-16.  Plaintiffs' argument that EPA could later alter a necessity determination, Pl.

Opp. at 6-7, misses the point.  That EPA may amend or even revoke a necessity determination is

not, and never has been, in dispute in this case.  Plaintiffs would, however, presumably object if

EPA did so without an adequate explanation.  <u>See</u> Pl. Opp. at 6 n. 2 (noting that Plaintiffs

"strongly object" to substance of EPA's modification of Florida necessity determination).  It is

certainly questionable whether a Fifth Circuit holding that EPA was not required to make a

necessity determination in the first place would be adequate justification for altering a

determination the Agency had already made.  Plaintiffs have thus failed to rebut EPA's

demonstration that, once EPA has made either a positive or a negative necessity determination,

the consequences of that determination are unlikely to be undone even if EPA prevails on appeal.[2]

Finally, Plaintiffs point to the time elapsed between entry of the Order and EPA's Motion for Stay.  Pl. Opp. at 5.  Plaintiffs have, however, made no showing that EPA's Motion was "*willfully* delayed," see id. (citation omitted), or that Plaintiffs have in any way been prejudiced by the delay.  This case is thus in stark contrast to that relied on by Plaintiffs, which involved (1) an unjustified lapse of time during which (2) the appellant actively misled the appellee regarding its intentions.  See Hirschfeld v. Board of Elections, 984 F.2d 35, 38 (2d Cir. 1993) ("Hirschfeld I") (filing of notice of appeal after having allowed decision requiring candidate's name to be placed on ballot in imminent election to stand for five weeks was "misleading at best;" Board of Elections had actively "fostered [the candidate's] expectation that the judgment would be the final determination of the matter" by corresponding with him concerning ballot in the interim); see also Hirschfeld v. Spanakos, 909 F. Supp. 174, 178 (S.D.N.Y. 1995) (characterizing stay motion addressed in Hirschfeld I as a "doomed motion [filed] for an improper purpose").[3]  EPA acknowledges, and regrets, that its Motion for Stay could not be filed promptly after the Court entered its Order – however, as set forth in EPA's opening Memorandum, this is largely a

---

[2] Plaintiffs have misconstrued EPA's argument concerning the effect of a negative necessity determination.  While it is true that "the lingering threat of a positive necessity determination," Pl. Opp. at 6, may encourage states to act, that was not EPA's point.  EPA simply pointed out that if it makes a negative necessity determination – i.e, says explicitly that numeric nutrient criteria are *not* necessary – states may be discouraged from adopting such criteria themselves. See EPA Stay Mem. at 15.

[3] The Board of Elections had also committed a procedural violation, in that it sought a stay from the Court of Appeals before doing so in the District Court.  See Fed. R. App. P. 8(a)(1) (party seeking stay pending appeal "must ordinarily move first in the district court"); Hirschfeld I, 984 F.2d at 38.  This fact alone led the Second Circuit to deny the motion for stay, although "[i]n the interest of completeness" it went on to explain why it would have denied the motion in any event. Id.  EPA has committed no such procedural violation in this case.

consequence of the government's extensive review and approval process regarding appeal.  See EPA Stay Mem. at 7-8.

**B.     PLAINTIFFS HAVE NOT REBUTTED EPA'S DEMONSTRATION THAT A STAY IS IN THE PUBLIC INTEREST AND WILL NOT HARM PLAINTIFFS**

As EPA explained in its opening Memorandum, even if EPA made a positive necessity determination it is highly unlikely that nutrient criteria – which is what Plaintiffs ultimately seek – would be published before EPA's appeal is concluded, which is likely to be in fall 2014 (i.e., approximately six months after EPA is currently obligated to make a necessity determination);[4] if EPA's appeal is unsuccessful, EPA will still make a necessity determination, albeit at a later date; if EPA's appeal is successful, all that Plaintiffs will have lost due to the stay is a necessity determination that EPA was not obligated to make in the first place; and even if the Order is stayed EPA will continue its existing work with the states to control and reduce nutrient pollution.  See EPA Stay Mem. at 16-17.

Plaintiffs do not dispute any of these facts, which collectively demonstrate that a stay would injure neither Plaintiffs nor the public interest.  Instead, Plaintiffs point to EPA's alleged delay in adopting federal numeric nutrient criteria.  See Pl. Opp. at 7-9.  EPA vigorously disagrees with Plaintiffs' characterization of EPA's efforts to promote the development of numeric nutrient criteria at the state level, and objects to Plaintiffs' effort to support their arguments with self-serving correspondence that postdates not only the administrative record in this matter but the very Order under consideration.  See Pl. Opp. Ex. 2.  These disagreements will not be discussed in detail, as they are largely irrelevant to the issue presently before the

---

[4] At the time that EPA submitted its Motion for Stay, EPA's opening brief was due on February 20, 2014.  EPA Mem. at 16.  EPA has since sought and obtained a one-week extension, until February 27, 2014, to file its opening brief.  Barring an unforeseen emergency, EPA does not anticipate seeking a further extension, and it remains likely that EPA's appeal will be resolved by this fall.

Court. It is important to note, however, that Plaintiffs' dissatisfaction with EPA's approach is ultimately a policy difference: Plaintiffs believe that EPA should be establishing federal numeric nutrient criteria, while EPA has concluded that the better approach is to continue its work with states and other entities to strengthen nutrient pollution controls. See EPA Stay Mem. at 2, 4-6.

Friends of the Wild Swan, Inc. v. EPA, 130 F. Supp. 2d 1207 (D. Mont. 2000), does not support Plaintiffs' argument. Friends of the Wild Swan arose against the background of Sections 303(c) and (d) of the Clean Water Act, which require that states first establish water quality standards and then identify waters within their boundaries that do not meet those standards. 33 U.S.C. § 1313(c)(2), (d)(1)(A). States are required to establish Total Maximum Daily Loads ("TMDLs") for pollutants causing nonattainment of water quality standards in the identified waters and submit those TMDLs to EPA, which must approve or disapprove the TMDLs within 30 days. 33 U.S.C. § 1313(d)(1)(C), (d)(2). The court ruled that EPA had acted arbitrarily and capriciously by failing to disapprove the State of Montana's submission of 130 TMDLs for 900 identified water-quality limited segments, and ordered EPA to establish a schedule for completing the statutorily-required TMDL development process. Friends of the Wild Swan, 130 F. Supp. 2d at 1207. Until the required TMDLs were completed, EPA and the State were prohibited from authorizing new or increased discharges of pollutants to the waters at issue. See id. at 1207, 1210.

The State of Montana (not, as Plaintiffs contend, EPA)[5] sought to stay that order pending appeal. See Friends of the Wild Swan, 130 F. Supp. 2d at 1209. The court concluded that a stay

---

[5] The case headnote says that the motion to stay was filed by EPA, but the opinion makes it clear the motion was actually filed by Montana. See Friends of the Wild Swan, 130 F. Supp. 2d at 1208 n.1 (noting that "the instant motion was brought by the State"); id. at 1209 (State moved to stay Order and Judgment pending appeal). EPA does appear to have supported the motion. See id. at 1210.

would injure other parties by "delay[ing] for more years the State's and the EPA's progress toward fulfillment of their *statutory duty."* Id. at 1213 (emphasis added).  The court has found no similar "dereliction" of a statutory obligation here, see Pl. Opp. at 7, nor will the Court's Order inevitably lead to the development of actual nutrient criteria.  There is nothing in Friends of the Wild Swan that suggests that Plaintiffs' policy preference for different or more expeditious Agency action is a sufficient basis for finding that a stay of the Order would harm either Plaintiffs or the public interest.

## C.    EPA HAS DEMONSTRATED A LIKELIHOOD OF SUCCESS ON THE MERITS

Plaintiffs naturally disagree with EPA's legal arguments.  See Pl. Opp. at 9-10.  Plaintiffs have, however, done nothing to rebut EPA's demonstration that it is likely to succeed on the merits of its appeal, and that at the least it has presented a substantial case concerning serious legal questions.  See EPA Stay Mem. at 9-14.  Plaintiffs' complaint that EPA's Motion for Stay merely "rehashes" EPA's summary judgment arguments, Pl. Opp. at 9, is contradicted by EPA's opening memorandum, which discusses both EPA's summary judgment arguments *and* the ways that EPA respectfully submits the Court erred in ruling on those arguments.  See EPA Stay Mem. at 11, 13.  Plaintiffs have not, moreover explained how their objections can be squared with the rule that a party generally cannot raise non-jurisdictional matters on appeal that were not raised to the court below.  A demonstration that a party is likely to succeed on the merits of an appeal may thus necessarily involve at least some discussion of arguments made in the first instance in the district court.

## CONCLUSION

For the foregoing reasons and for the reasons stated in EPA's opening Memorandum, EPA's Motion for Stay should be granted.

February 24, 2014

Respectfully submitted,

Robert G. Dreher
Acting Assistant Attorney General
United States Department of Justice
Environment and Natural Resources
       Division

*/s Angeline Purdy*
By: _____
Angeline Purdy
Environmental Defense Section
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
Voice: (202) 514-0996
Fax: (202) 514-8855
e-mail: angeline.purdy@usdoj.gov

OF COUNSEL:

Peter Z. Ford
Office of General Counsel
United States Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on February 24, 2014, I filed the foregoing Reply (under cover of the accompanying Motion for Leave) via the CM/ECF system, which will electronically serve all counsel of record.

*/s  Angeline Purdy*

_____
Angeline Purdy