# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

---------------------------------------------------------------------

| | |
|---|---|
| GULF RESTORATION NETWORK, MISSOURI COALITION FOR THE ENVIRONMENT, IOWA ENVIRONMENTAL COUNCIL, TENNESSEE CLEAN WATER NETWORK, MINNESOTA CENTER FOR ENVIRONMENTAL ADVOCACY, SIERRA CLUB, WATERKEEPER ALLIANCE, INC., PRAIRIE RIVERS NETWORK, KENTUCKY WATERWAYS ALLIANCE, ENVIRONMENTAL LAW & POLICY CENTER, and the NATURAL RESOURCES DEFENSE COUNCIL, INC., | ) ) ) ) ) ) ) ) ) ) ) |
| | ) Civil Action ) No.: 2:12-cv-00677 ) Section "E," Division 3 |
| Plaintiffs, | ) Honorable J. C. Zainey ) Magistrate Judge Knowles |
| v. | ) ) ) |
| LISA P. JACKSON, Administrator of the United States Environmental Protection Agency, and THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, | ) ) ) ) ) |
| Defendants, | ) ) ) |

---------------------------------------------------------------------

## PLAINTIFFS' COMBINED OPPOSITION TO EPA's CROSS-MOTIONS AND REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON REMAND

Machelle Lee Hall
Adam Babich
Tulane Environmental Law Clinic
*Counsel for All Plaintiffs*

Ann Alexander
Natural Resources Defense Council
*Counsel for Plaintiffs Gulf Restoration Network, Missouri Coalition for the Environment, Iowa Environmental Council, Tennessee Clean Water Network, Minnesota Center for Environmental Advocacy, Sierra Club, Waterkeeper Alliance, Prairie Rivers Network, Kentucky Waterways Alliance, and Natural Resources Defense Council*

Bradley Klein
Environmental Law & Policy Center
*Counsel for Plaintiff Environmental Law and Policy Center*

February 15, 2016

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................... 5

      EPA's Denial is Not Grounded in the Statute's Terms ........................................ 5

      A.      The Fifth Circuit Defined the Types of Statutory Factors that
               Must be Considered in Evaluating a Necessity Determination ............................. 5

              1.      The Standard of Review Does Not Resolve the
                      Substantive Question on Remand of Whether EPA's
                      Decision is Grounded in the Statute ......................................... 6

              2.      EPA's Task of Grounding its Decision in the CWA
                      is Well-Defined and Not Excessively Burdensome .................... 8

              3.      EPA Misreads *Massachusetts v. EPA* Concerning
                      Resource Considerations ........................................................ 10

      B.      EPA Failed to Ground its Decision in the Statutory Factors ................................ 13

CONCLUSION ................................................................................................................ 16

i

## <u>TABLE OF AUTHORITIES</u>

### CASES

*American Horse Protection Association v. Lyng,*
    812 F.2d 1 (D.C. Cir. 1987) ................................................................................11, 12

*Defenders of Wildlife v. Guitierrez,*
    532 F.3d 913 (D.C. Cir. 2008) ............................................................................12, 13

*GRN v. McCarthy,*
    783 F.3d 227 (5th Cir. 2015) ............................................................................ *passim*

*Luminant Generation Co. v. EPA,*
    675 F.3d 917 (5th Cir. 2012) ....................................................................................14

*Massachusetts v. EPA,*
    549 U.S. 497 (2007) ........................................................................................... *passim*

*Sec. & Exch. Comm'n v. Chenery Corp.,*
    318 U.S. 80 (1943) ............................................................................................. 13-14

*WildEarth Guardians v. EPA,*
    751 F.3d 649 (D.C. Cir. 2014) ........................................................................... 12-13

### STATUTES AND REGULATIONS

§ 303(c)(4)(B) ...................................................................................................5, 6, 7, 9

5 U.S.C. § 706(1) ......................................................................................................11

33 U.S.C. § 1313(c)(2)(A) ...................................................................................1, 5, 10

33 U.S.C. § 1313(c)(4) ................................................................................................2

33 U.S.C. § 1313(c)(4)(B) ............................................................................................7

42 U.S.C. § 7521(a)(1) ................................................................................................8

40 C.F.R. § 131.2 ...............................................................................................1, 5, 10

OTHER AUTHORITIES

Nat'l Oceanic and Atmospheric Admin., U.S. Dept. of Commerce,
*2015 Gulf of Mexico dead zone 'above average'* (Aug. 4, 2015)
http://www.noaanews.noaa.gov/stories2015/080415-gulf-of-mexico-dead-zone-above-average.html.................................................................................................................2

EPA, *Notice of National Strategy for the Development of Regional Nutrient Criteria*, 63 Fed. Reg. 34648, 34648-49 (June 25, 1998)............................................................10

**PLAINTIFFS' COMBINED OPPOSITION TO EPA's
CROSS-MOTIONS AND REPLY IN SUPPORT OF
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON REMAND**

Pursuant to this Court's Order of July 20, 2015 (ECF No. 195), Plaintiffs respectfully submit their combined Opposition to EPA's[1] cross-motion for summary judgment, and Reply in support of their motion for summary judgment (Reply). This Reply also responds to the brief submitted by the Non-State Intervenors (Non-State Br., ECF No. 205).

## Introduction

The heart of the Court of Appeals' remand order to this Court is a simple instruction: to determine whether EPA's explanation for why it declined to decide whether numeric criteria are "necessary" to meet Clean Water Act requirements was legally sufficient. This means that EPA's reasons "must be rooted in the words" of the Act. *GRN v. McCarthy*, 783 F.3d 227, 240 (5th Cir. 2015). It "cannot rely on alternative policy grounds, even if reasonable, if those explanations do not find clear textual support." *Id*. at 239. Thus, EPA "can *only* justify its decision not to make a necessity determination based on factors identified in the language of the statute." *Id*. at 240 (emphasis added). These factors boil down to: *1)* protection of public health and welfare; *2)* protection of use and value of public water supplies and water bodies; and *3)* attainability of uses.[2]

In principle, therefore, EPA's response to the Petition could have acknowledged the necessity of nutrient criteria to protect the public use and value of more than 5,000 square miles of potentially prime fishing and recreational waters in the Gulf of Mexico. Alternatively, EPA

---

[1] Abbreviations used in this Reply are defined in Plaintiffs' initial Memorandum (ECF No. 198-2) (Plaintiffs' Br.) unless otherwise indicated.

[2] *See* 33 U.S.C. § 1313(c)(2)(A); 40 C.F.R. § 131.2; *GRN v. McCarthy*, 783 F.3d 240 & n.73; *see generally* Plaintiffs' Br. 2, 13-14 (ECF No. 198-2). These "requirements provide guidance for the types of considerations the EPA must take into account in deciding the necessity of regulation." 783 F.3d at 240.

might conceivably have asserted that—contrary to known facts[3]—the Agency's "cooperative approach" is somehow succeeding in shrinking this annually recurring environmental disaster, rendering numeric criteria unnecessary.  As a third alternative, the focus of the Court of Appeals decision, EPA might have asserted that scientific uncertainty or some other impediment "is so profound"[4] that it precludes EPA from making a reasoned judgment based on the statutory factors.

EPA, however, did none of these.  Instead, it relied on its non-statutory policy preference to "work cooperatively with states and tribes to strengthen nutrient management programs."  AR 4.7.  Thus, despite the best efforts of the Agency's counsel to reinterpret and rehabilitate EPA's decision, the 2011 Denial Letter flunks the Fifth Circuit's test of providing "an adequate explanation, **grounded in the statute**."  *GRN v. McCarthy*, 783 F.3d at 243 (emphasis added). The Denial Letter cites virtually no law, and relies on considerations wholly extraneous to the Act.  Not surprisingly, therefore, the U.S. Department of Justice now offers a defense to EPA's failure to answer the bottom-line question posed by 33 U.S.C. § 1313(c)(4) – whether "a revised or new standard is necessary to meet the requirements of [the Act]" – that comes down to a plea for deference.[5]

Granted, EPA's consideration of rulemaking petitions is entitled to broad deference. That deference, however, does not change the Agency's statutory mandate or allow it to substitute competing priorities for those of Congress.  Instead, the Agency's discretion must be

---

[3] Nat'l Oceanic and Atmospheric Admin., U.S. Dept. of Commerce, *2015 Gulf of Mexico dead zone 'above average'* (Aug. 4, 2015) ("[T]his year's Gulf of Mexico dead zone—an area of low to no oxygen that can kill fish and marine life—is, at 6,474 square miles, above average in size . . . .").
http://www.noaanews.noaa.gov/stories2015/080415-gulf-of-mexico-dead-zone-above-average.html
[4] *See Massachusetts v. EPA*, 549 U.S. 497, 501 (2007).
[5] *See, e.g.*, Defendant EPA's Combined Memorandum in Support of its Cross-Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment (ECF No. 201-1) (EPA Br.) at 13.

exercised "within defined statutory limits." *Massachusetts v. EPA*, 549 U.S. 497, 533 (2007). The law requires "a close and specific linkage" between EPA's decision and the underlying statute. *GRN v. McCarthy*, 783 F.3d at 239. EPA's explanation for its refusal to decide is simply not "rooted in the words" of the statute. It is not enough for EPA "to put forward reasonable explanations . . . that are not inconsistent with the statute." *Id.* Instead, the law requires "an explicit textual connection," *id.*, that EPA has failed to provide.

EPA presents four categories of argument, none of which can sustain its decision not to make any necessity determination:

- *EPA conflates the substance of review with the standard of review.* EPA and the Non-State Intervenors make much of the last few lines of the Court of Appeals opinion, which reiterates the deferential standard of review that all parties have acknowledged. But it asks this Court to ignore the *substantive limits* that the Court of Appeals carefully laid out – that is, whether EPA's Denial Letter was grounded in the statute. Because it was plainly not, no degree of deference can rescue EPA here.

- *EPA misreads Massachusetts v. EPA.*[6] EPA argues that its decision "not to make a necessity determination at all" should be held to a more relaxed standard than "actually making a positive or negative necessity determination." EPA Br. at 16 (ECF No. 201-1). The Court of Appeals put that argument to rest, ruling unambiguously that "the types of considerations the EPA must take into account in deciding the necessity of regulation … are the same factors that must be considered when the EPA declines to make a necessity determination." 783 F.3d at 240. Yet

---

[6] 549 U.S. 497 (2007).

EPA is still arguing, "That cannot be right,"[7] and pressing this Court to allow consideration of extra-statutory factors in such decisions.

- *EPA exaggerates the task at hand.*  EPA frames the task of responding according to the statutory factors as a monumentally heavy lift.  Yet the Court of Appeals (and Plaintiffs in their initial brief) has already laid out what the relevant statutory factors are, and EPA does not meaningfully dispute them.  The Agency has been tracking states' progress (or lack thereof) toward addressing the Gulf Dead Zone crisis for decades, and is now charged with the reasonable task of evaluating that progress and either deciding whether federal action is necessary, or explaining what reasons are "so profound" that they preclude EPA from deciding.[8]

- *EPA pretends that the task has already been done.*  In the alternative, EPA argues that its general references in the Denial Letter to the topic of water quality should be interpreted as grounding its decision in the statute.  The Agency is grasping at straws.  If simply referencing the subject matter of the statute were the same as identifying and implementing its terms, then *Massachusetts v. EPA* would have had a different outcome.

This Court should reject these meritless arguments, grant Plaintiffs' motion, deny EPA's cross-motion, and remand the Denial Letter with an order that EPA prepare a response that complies with law within 120 days.

---

[7] EPA Br. at 16 (ECF No. 201-1).
[8] Dissenting in *Massachusetts v. EPA*, Justice Scalia would have accepted EPA's passing reference to scientific uncertainty as grounds for a non-decision.  *See Massachusetts v. EPA*, 549 U.S. 497, 553 (2007) (Scalia dissenting) (arguing that EPA sufficiently based its non-decision on scientific uncertainty).  The majority, however, ruled that:  "If the scientific uncertainty is so profound that it precludes EPA from making a reasoned judgment as to whether greenhouse gases contribute to global warming, EPA must say so."  549 U.S. at 534.

<u>**Argument**</u>

<u>**EPA'S DENIAL IS NOT GROUNDED IN THE STATUTE'S TERMS**</u>

Both Defendants and Non-State Intervenors rely heavily on the Court of Appeals' re-articulation of the applicable deferential standard of review, yet skirt the actual *question* this Court was asked to review under that standard:  whether EPA has provided "an adequate explanation, *grounded in the statute*" for its decision.  *GRN v. McCarthy*, 783 F.3d at 243.  The Court of Appeals specifically identified the provisions governing water quality standard-setting that EPA needed to consider, and EPA simply failed to do so, under any standard of review.

**A. The Fifth Circuit Defined the Types of Statutory Factors that Must be Considered in Evaluating a Necessity Determination**

The Court of Appeals specified that the "requirements of this chapter" which EPA must consider in evaluating a § 303(c)(4)(B) necessity determination are "further defined" by other, more specific requirements set forth in both the Act and its regulations.  *GRN v. McCarthy*, 783 F.3d at 240.  The Fifth Circuit quoted 33 U.S.C. § 1313(c)(2)(A), which provides the following requirements:  "protect the public health or welfare, enhance the quality of water and serve the purposes of this chapter," considering "use and value for public water supplies, propagation of fish and wildlife, recreational purposes, and agricultural, industrial, and other purposes, and … navigation." *Id.* at 240.  The Court of Appeals also quoted 40 C.F.R. § 131.2, in which EPA defined Congress' phrase, "serve the purposes of this chapter," as "wherever attainable, provide water quality for the protection and propagation of fish, shellfish and wildlife and for recreation [considering] . . . their use and value of public water supplies, propagation of fish, shellfish, and wildlife, recreation . . . and agricultural, industrial, and other purposes including navigation." *Id.* at 240 n.73, *see generally* Plaintiffs' Br. 13-14 (ECF No. 198-2).  The Court of Appeals held,

"these requirements provide guidance for the types of considerations the EPA *must* take into account in deciding the necessity of regulation."  783 F.3d at 240 (emphasis added).  The linchpins of a § 303(c)(4)(B) necessity decision are therefore:  *1)* public health and welfare; *2)* use and value of public water supplies and water bodies; and *3)* attainability.  The Court of Appeals then concluded that the requirement to consider these factors applies with equal force to a non-determination:  "*these* are the same factors that *must* be considered when the EPA *declines to make* a necessity determination"; and "the agency can *only* justify its decision not to make a necessity determination based on factors identified in the language of the statute."  *Id.* (emphasis added).

Thus, the Court of Appeals made it very clear that the Act's statutory and regulatory provisions governing water quality, such as those it cited, define the types of factors that must be considered either in a necessity determination, or in a decision to decline to make such a determination.  Consideration of these factors is mandatory ("must"); and applies regardless of the applicable standard of review, and regardless of EPA's oft-stated preference, reiterated on remand, for focusing on "resource constraints and competing regulatory considerations" rather than the mandate of Congress.  EPA Br. at 17 (ECF No. 201-1).

1.  The Standard of Review Does Not Resolve the Substantive Question on Remand of Whether EPA's Decision is Grounded in the Statute

Defendants and Non-State Intervenors attempt to dismiss the significance of the Court of Appeals' identification of specific statutory and regulatory factors that "must be considered when the EPA declines to make a necessity determination"  by focusing instead on the Court of Appeals' statement of the applicable standard of review.  783 F.3d at 240.  They effectively ask this Court to focus solely on that deferential standard, and disregard the preceding extensive discussion of the statutory factors that circumscribe a necessity determination.  EPA Br. at 15

(ECF No. 201-1), Non-State Br. at 5 (ECF No. 205).  This approach diminishes the role of the reviewing court, is contrary to *Massachusetts v. EPA*, and overlooks the substance of the Court of Appeals' opinion.  Because Congress has inarguably "given sufficient guidance for judicial review of the agency's actions under the statute," 783 F.3d at 238, a deferential standard of review is far from a rubber stamp.  EPA must still show that it identified reasons for refusing to determine whether numeric nutrient standards are necessary that are "rooted in the words of section 1313(c)(4)(B)."  *Id*. at 240.  A deferential standard of review is not a free pass to disregard the Agency's statutory mandate to base its § 303(c)(4)(B) decision on factors set forth in the statute.

The fact that the Court of Appeals identified the relevant statutory factors in the discussion of jurisdiction does not somehow make them irrelevant, as EPA suggests.  The Court of Appeals' decision leaves no doubt that its discussion of the jurisdictional question is inseparable from the substantive question of whether EPA considered the proper factors.  Jurisdiction exists under the APA, the Court held, precisely *because* there is a set of statutory factors that EPA "must" consider in its decision, as opposed to having unfettered discretion to consider anything it wants.  *Id*.

Indeed, if EPA actually had the option of ignoring the relevant statutory criteria, and had unfettered discretion to choose any criteria it wanted, the outcome of the Court of Appeals' decision concerning jurisdiction would have been the opposite, as there would have been effectively "no law to apply" under the APA.  *Id*. at 233.  Instead, the Court determined that "Congress has placed sufficient guideposts" around the necessity determination to enable review, and made clear that those guideposts limit EPA's discretion under § 303(c)(4)(B).  *Id.* at 238; *see id.* at 240 ("because the agency can only justify its decision not to make a necessity

determination based on factors identified in the language of the statute, we look to those words to decide whether the statute is sufficiently specific to allow judicial review."). Thus, the Court of Appeals' mandate that this Court determine whether EPA's decision was "grounded in the statute" cannot rationally be separated from the Court of Appeals' definition of what statutory factors the decision must be grounded in.

To suggest, as EPA does (EPA Br. at 15 (ECF No. 201-1)), that the jurisdictional context of the discussion somehow renders these factors optional despite the use of mandatory language ignores the Court of Appeals and Supreme Court's clear holdings that the statutory limits they defined necessarily circumscribe agency discretion. The Supreme Court's reasoning in *Massachusetts v. EPA* is directly on point:

> The alternative basis for EPA's decision – that even if it does have statutory authority to regulate greenhouse gases, it would be unwise to do so at this time – rests on reasoning divorced from the statutory text. While the statute does condition the exercise of EPA's authority on its formation of a "judgment," 42 U.S.C. § 7521(a)(1), that judgment must relate to whether an air pollutant "cause[s], or contribute[s] to, air pollution which may reasonably be anticipated to endanger public health or welfare," *ibid*. ***Put another way, the use of the word "judgment" is not a roving license to ignore the statutory text. It is but a direction to exercise discretion within defined statutory limits.***

549 U.S. at 532-33 (emphasis added).

> ### 2. EPA's Task of Grounding its Decision in the CWA is Well-Defined and Not Excessively Burdensome

In attempting to muddy the Court of Appeals' clear mandate, EPA implies that the task of providing a response to the Plaintiffs' petition that is "grounded in the statute" is an enormous administrative burden. It complains of the "heavy burden" of merely identifying the "substantive statutory criteria governing a necessity determination." EPA Br. at 15 (ECF No. 201-1). It expresses further concern about the "level of detail" required to provide a response that is grounded in CWA water quality standard-setting factors, and asserts that Plaintiffs "cannot be

right" that EPA non-decisions be held to the same standard as actual positive or negative necessity determinations, despite the Court of Appeals' clear language confirming exactly that. *Compare* EPA Br. at 16 (ECF No. 201-1) (asserting that Plaintiffs "cannot be right") *with* 783 F.3d at 240 (confirming that the factors EPA must consider in deciding the necessity of regulation are "the same factors that must be considered when EPA declines to make a necessity determination").

Based on close analysis of *Massachusetts v. EPA*, the Fifth Circuit explained in depth the "close and specific linkage" between the criteria governing a non-decision under § 303(c)(4)(B) and the criteria governing a decision under that section. *GRN v. McCarthy*, 783 F.3d at 238-40. It held that the *Massachusetts* case requires that EPA's non-answer be grounded in an "explicit textual connection" to statutory requirements providing "clear textual support." *Id.* at 238-39. The Fifth Circuit considered and unambiguously rejected an alternative approach that "would have allowed the agency to put forward reasonable explanations for not making threshold determinations that are not inconsistent with the statute, rather than insisting upon an explicit textual connection." *Id.* at 239 (noting that the Supreme Court majority's "reject[ion of] this reading suggests a tighter linkage is required."). Instead, the law in this circuit is clear that EPA "cannot rely on alternative policy grounds, even if reasonable, if those explanations do not find clear textual support." *Id.*

In any event, EPA's suggestion that a statutorily-compliant reply would impose an onerous administrative burden is baseless. As to the initial step of identifying the proper criteria, which EPA characterizes as a "heavy burden," the Fifth Circuit's opinion (as well as Plaintiffs' Br. at 13-14 (ECF No. 198-2)) has already laid out key relevant statutory and regulatory

9

provisions which boil down to three factors: *1)* protection of public health and welfare; *2)* protection of use and value of public water supplies and water bodies; and *3)* attainability of uses.[9]  EPA provides no contrary indication as to what the proper statutory factors are, aside from its general position that it should be allowed to consider non-statutory factors such as resource constraints.  EPA is equally unconvincing in its complaint that providing a response grounded in these factors would be excessively burdensome.  The Agency has already been tracking and overseeing states' Clean Water Act standard-setting process for decades.  In 1998, the Agency had sufficient information on hand to declare that "EPA expects all States and Tribes to adopt and implement ***numerical*** nutrient criteria into their water quality standards by December 31, 2003."  EPA, *Notice of National Strategy for the Development of Regional Nutrient Criteria*, 63 Fed. Reg. 34648, 34648-49 (June 25, 1998) (emphasis added).  The Agency stated further, "if EPA determines that a new or revised nutrient standard is necessary . . . (*e.g.*, because EPA determines that the State or Tribe has not demonstrated reasonable progress toward developing ***numerical*** nutrient standards), EPA will initiate rulemaking to promulgate nutrient criteria appropriate to the region and waterbody types."  *Id*. (emphasis added).

> 3.  EPA Misreads *Massachusetts v. EPA* Concerning Resource Considerations

The Fifth Circuit ruled that EPA "cannot rely on alternative policy grounds, even if reasonable, if those explanations do not find clear textual support."  783 F.3d at 239.  Yet EPA continues to argue that it somehow remains free to base its petition response on extra-statutory factors pertaining to administrative preferences and priorities.  EPA Br. at 17-20, 28-31 (ECF No. 201-1).  This assertion misreads *Massachusetts*, and is contradicted by the outcome of that

---

[9] *See* 33 U.S.C. § 1313(c)(2)(A); 40 C.F.R. § 131.2; *GRN v. McCarthy*, 783 F.3d 240 & n.73; *see generally* Plaintiffs' Br. 2, 13-14 (ECF No. 198-2).  These "requirements provide guidance for the types of considerations the EPA must take into account in deciding the necessity of regulation."  783 F.3d at 240.

case.  The Agency quotes the Court's statement in *Massachusetts* that "an agency has broad discretion to choose how best to marshal its limited resources," but omits both context and conclusion.  Here is the *Massachusetts* Court's entire statement on the concept:

> ***EPA no doubt has significant latitude as to the manner, timing, content, and coordination of its regulations with those of other agencies. But once EPA has responded to a petition for rulemaking, its reasons for action or inaction must conform to the authorizing statute.*** Under the clear terms of the Clean Air Act, EPA can avoid taking further action only if it determines that greenhouse gases do not contribute to climate change or if it provides some reasonable explanation as to why it cannot or will not exercise its discretion to determine whether they do. *Ibid*. ***To the extent that this constrains agency discretion to pursue other priorities of the Administrator or the President, this is the congressional design.***

549 U.S. at 533 (emphasis added).  The Court could not have been clearer that a petition response grounded in the statutory text is required.  EPA's assertion that "agency discretion to pursue other priorities" is a *substitute* for a statutorily grounded response is without merit.  EPA's "limited resources" argument ***might*** have had some application in a discussion concerning timing in an "unreasonable delay" lawsuit to force an initial EPA response to a petition for rulemaking.  *See* 5 U.S.C. § 706(1) (authorizing courts to "compel agency action unlawfully withheld or unreasonably delayed").  But as was the case in *Massachusetts v. EPA*, the Agency is now past that point.  Because EPA has now "responded to a petition for rulemaking, its reasons for action or inaction must conform to the authorizing statute."  549 U.S. at 533.

EPA attempts (yet again) to distinguish *Massachusetts*, this time on the ground that EPA had in that case denied its authority to act.  EPA makes the same claim regarding *American Horse Protection Association v. Lyng*, 812 F.2d 1 (D.C. Cir. 1987), an earlier case rejecting a petition response for being insufficiently grounded in the statute.  The Agency is wrong on both counts.  With respect to *Massachusetts*, EPA fails to articulate the relevance of EPA's having denied its authority to act, because there is none.  The argument concerning authority was merely

11

an alternative contention by the Agency.  The Court addressed EPA's alternative arguments serially and separately, as alternative arguments, and held that "[t]he alternative basis for EPA's decision—that even if it does have statutory authority to regulate greenhouse gases, it would be unwise to do so at this time—rests on reasoning divorced from the statutory text."  549 U.S. at 532.

As to *American Horse Protection Association*, EPA is simply wrong in describing the facts.  The agency at issue in that case never denied its authority to act.  It simply responded to the petition with a wholly unsubstantiated statement that the status quo was working well, and that it preferred to keep studying the problem rather than taking action. That conduct, not any denial of inherent authority, is what led the court to conclude that the agency was "blind to the nature of [its] mandate from Congress."  812 F.2d at 7.

The two other cases that EPA cites also fail to support its position.  Both *WildEarth Guardians v. EPA*, 751 F.3d 649 (D.C. Cir. 2014) and *Defenders of Wildlife v. Guitierrez*, 532 F.3d 913 (D.C. Cir. 2008) addressed the situation where the agency was already promulgating regulations pursuant to the statute at issue.  Far from EPA's vague statement in the Denial Letter that it might "use its discretion…as appropriate" to make a necessity determination "at some future time," the agencies at issue in *Defenders* and *WildEarth* were firmly on the rulemaking path, and the only question was the order in which various aspects of the rulemaking would be accomplished.  In *WildEarth Guardians*, the plaintiff petitioned to add a new source – coal mines – to an existing list of Clean Air Act sources regulated by EPA.  EPA responded that it was "focusing first on promulgating standards for transportation and electricity systems because these are the largest sources, responsible for more than 60% of the greenhouse gas emissions in the

United States," before it promulgated standards for coal mines, which account for approximately one percent of such emissions.  751 F.3d at 653.

Similarly, in *Defenders*, the National Marine Fisheries Service (NMFS) was in the process of promulgating a final, comprehensive rule.  Since the comprehensive rule covered the subject matter of the plaintiffs' petition for an emergency rulemaking, and the plaintiffs did "not present any new information about right whales that warrants promulgating a rule on an emergency basis rather than completing the ongoing rulemaking," NMFS opted to continue with its comprehensive rulemaking rather than initiating a separate one.  532 F.3d at 920-21.  No such ongoing rulemaking effort is in place here.  EPA, instead, has substituted its own preference for "working cooperatively with states" for the rulemaking process that Congress has prescribed.

**B.  EPA Failed to Ground its Decision in the Statutory Factors**

EPA argues at length, in the alternative, that to the extent it can be compelled to consider statutory factors in its petition denial, then it has already done so.  EPA Br. at 21-28 (ECF No. 201-1).  This argument is flatly belied by the substance of the Denial Letter – which, as pointed out by Plaintiffs in their initial brief, cites to the law only briefly in passing.  Plaintiffs' Br. at 16-17 (ECF No. 198-2).  EPA's brief includes extensive additional legal citations in support of the Agency's attempt to backfill the deficiencies in the Denial Letter, but none of that law appears where it matters under *Massachusetts v. EPA* and the Court of Appeals' decision:  in the Denial Letter itself.  This violates one of the fundamental principles of administrative law that post hoc rationalizations of counsel cannot be used in defense of administrative agency decisions.  *Sec. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 95 (1943) (holding that "an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were

13

those upon which its action can be sustained."); *Luminant Generation Co. v. EPA*, 675 F.3d 917, 925 (5ᵗʰ Cir. 2012) ("We must disregard any post hoc rationalizations of the EPA's action and evaluate it solely on the basis of the agency's stated rationale at the time of its decision.").

In any event, even EPA's post hoc rationalizations are unavailing.  EPA's argument is essentially that, since the Denial Letter contains discussion of the same overall subject matter as the Act, it is thereby grounded in the text of the statute.  This approach is wholly inconsistent with the outcome of *Massachusetts*.  In that case as well, EPA provided a response that addressed the general subject matter of greenhouse gases, and touched loosely on the substantive technical question of climate change uncertainty.  That was not enough.  The Court held that this oblique discussion of the general topic addressed by the statute did not pass muster as the required explicit reasoning that "conform[s] to the authorizing statute."  549 U.S. at 533.

The absurdity of EPA's position that a general discussion of water quality issues suffices as statutory grounding is evident in its proffered examples.  In its Section III.A.1 (EPA Br. 22-23 (ECF No. 201-1)), EPA lays out some of the regulatory provisions governing water quality standard-setting, including the need to identify designated uses and assess pollution that impairs those uses.  EPA never explains, however, how these provisions – which are not cited in the Denial Letter – informed the petition denial set forth in that Letter, because they did not.  Indeed, EPA notes that it conceded in the Denial Letter that nutrient pollution is causing a significant water quality impairment problem – a conclusion that would *support* a necessity finding under the identified statutory factors.  EPA offers no explanation of how it applied the factors to conclude nonetheless that it could not determine whether federal action is necessary, despite having openly acknowledged the severity of the problem.

The Agency's other examples are no more rational.  In Section III.A.2 of its brief, EPA cites to the regulatory provision setting forth a preference for numeric rather than narrative water quality criteria.  But it provides no explanation of how it actually brought that preference to bear in its decision, which did not cite it.  EPA simply articulates the general and obvious observation that numeric criteria alone cannot resolve the entire nutrient crisis.

The remaining examples bear essentially no connection to the Act's statutory and regulatory provisions that govern water quality standard-setting.  In III.A.3 of its brief, the Agency notes that the CWA generally authorizes it to provide technical assistance to the states, but fails to explain how this general authorization bears on the question of whether federal nutrient criteria are necessary.  The Agency offers no reasoned explanation of why it was unable to assess the states' progress toward promulgating standards in responding to the petition.  In III.A.4, EPA introduces an aspect of the nutrient problem – nonpoint runoff – governed by a portion of the Act that is entirely separate from the water quality standard-setting provisions. Section III.A.5 is merely a reiteration of EPA's insupportable position that it was allowed to base its petition response on bureaucratic resource considerations rather than statutory criteria; and Section III.A.6 essentially reiterates the federalism argument that the Court of Appeals rejected, *i.e.*, the Agency's contention that the larger role played by the states in the water quality standard-setting process diminishes the force of the *Massachusetts v. EPA* requirement that petition decisions be grounded in the statute.  The Court of Appeals held that the water quality standard-setting process in the Act "is defined by federal action: as Justice White noted in a different context, even though the CWA is a state-federal partnership, 'the Federal Government maintains an extraordinary level of involvement' in administering the act."  *GRN v. McCarthy*, 783 F.3d at 241.  No good has come, in this situation or elsewhere, of allowing EPA to shirk its

role as the backstop in the Act's cooperative federalism regime, or subordinate its statutory authority to states that have failed to fulfill their obligations to protect the public's water resources.

In the end, none of EPA's strained post hoc rationalizations can make up for the fact that EPA's Denial Letter was simply not "grounded in the statute."  EPA provided no explanation in the Denial Letter – and certainly not the "explicit" explanation mandated by *Massachusetts* and the Court of Appeals – of why it could not make a necessity determination pursuant to the Act's water quality standard-setting provisions.  More than three years later—and nearly eight years after the petition was filed—EPA has failed again to provide that explanation.  *GRN v. McCarthy*, 783 F.3d at 238-39.  The statutory provisions governing a necessity determination are straightforward and not genuinely in dispute.  Since EPA has plainly failed to ground its decision in them, this Court should remand the petition with an order that it promptly do so.

<u>Conclusion</u>

For all of the foregoing reasons, this Court should overturn and remand the Denial Letter with an order that EPA provide a lawful response to the petition within 120 days.

Dated: February 15, 2016

Respectfully submitted,

/s/ Machelle Lee Hall_____ _____
Machelle Lee Hall, Staff Attorney La. Bar No. 31498
Adam Babich, La. Bar No. 27177
Tulane Environmental Law Clinic
6329 Freret Street
New Orleans, LA 70118-6321
Phone: (504) 865-5789, direct 862-8814 or 862-8800
Fax: (504) 862-8721
*Counsel for All Plaintiffs*

16

_____

Ann Alexander (Admitted pro hac vice)
Natural Resources Defense Council
20 North Wacker Drive, Suite 1600
Chicago, IL 60606
(312) 651-7905
aalexander@nrdc.org
*Counsel for Plaintiffs Gulf Restoration Network,
Missouri Coalition for the Environment, Iowa
Environmental Council, Tennessee Clean Water
Network, Minnesota Center for Environmental
Advocacy, Sierra Club, Waterkeeper Alliance, Prairie
Rivers Network, Kentucky Waterways Alliance, and
Natural Resources Defense Council*

_____

Bradley Klein (Admitted pro hac vice)
Environmental Law & Policy Center
35 East Wacker Drive, Suite 1600
Chicago, IL 60601
312-673-6500
bklein@elpc.org
*Counsel for Plaintiff Environmental Law and Policy
Center*

17

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 15, 2016, I caused as copy of the foregoing to be served through the Court's CM/ECF system to all parties.

*Ann Alexander*

_____